Edward G. HOWARD,
Plaintiff–Appellant,

Federal Deposit Insurance Corporation,
Plaintiff–Appellee,

v.

Said HADDAD; James H. McMullin,
Defendants–Appellees.

Edward G. HOWARD,
Plaintiff–Appellee,

v.

Said HADDAD, Defendant–Appellant.

Edward G. HOWARD,
Plaintiff–Appellee,

v.

James H. McMULLIN,
Defendant–Appellant.

Nos. 89–2368, 89–2379 and 89–2380.

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1990.
Decided Oct. 16, 1990.

**168**

Jeffrey Allen Tew, argued (Dannis A. Nowak, Kirkpatrick & Lockhart, Miami, Fla., Larry R. Lavoie, Kirkpatrick & Lockhart, Washington, D.C., on brief), for plaintiff-appellant.

Richard Bernstein, Stuzin & Camner, P.A., Miami, Fla., James M. Saunders, Mays & Valentine, Arlington, Va., Ana T. Barnett, Stearns, Weaer, Miller, Weissler, Alhadeff & Setterson, P.A., Miami, Fla., argued (Wesley R. Parsons, Juan A. Gonzalez, Stuzin & Camner, P.A., Miami, Fla., Frank E. Brown, Jr., Mays & Valentine, Arlington, Va., on brief), for defendants-appellees.

Before POWELL, Associate Justice, Retired, United States Supreme Court, sitting by designation, HALL, Circuit Judge, and BUTZNER, Senior Circuit Judge.

K.K. HALL, Circuit Judge:

Edward G. Howard appeals the district court's order allowing the Federal Deposit Insurance Corporation ("FDIC") to intervene in a fraud action brought by Howard against two former directors of the Trust Bank ("Bank"), an insolvent state-chartered bank for which the FDIC had been appointed liquidator. He also appeals the order granting the FDIC's motion to dismiss the action because it was derivative of the agency's claims against the Bank and its directors. The defendants in Howard's action, Said Haddad and James H. McMullin, cross-appeal the order denying their motion for sanctions against Howard and his attorney. We affirm the intervention order, but reverse the dismissal order and remand with instructions to reinstate the action. We affirm the sanctions order.

**I**

Howard originally filed his complaint against Haddad, McMullin and three other directors of the Bank, alleging that Haddad and McMullin induced him to purchase a large block of shares in the Bank without disclosing the precarious financial condition of the institution. The Bank operated under a charter granted by the State of Florida. The complaint also asserted RICO claims against the individual defendants based on an alleged pattern of corporate mismanagement which led to a steep decline in the Bank stock's value, culminating in the FDIC takeover. After being advised by the FDIC that it considered his claims to be derivative and, therefore, the property of the FDIC, Howard amended his complaint in an attempt to remove any arguably derivative causes of action. This amended complaint was pared down to a single federal count and two state fraud

counts against Haddad and McMullin. The factual basis of these claims was the two directors' successful solicitation of Howard to purchase $500,000 of stock in the Bank in 1986. Howard claimed that each of the directors misrepresented the Bank's condition in an effort to secure badly needed capital. He sought damages or, alternatively, rescission of the contract of sale.

Two weeks later, the FDIC filed motions to intervene and to dismiss the action. The FDIC argued that, as liquidator of the Bank, it owned all causes of action for harm done to the Bank arising out of mismanagement of or breach of duties to the Bank. The court accepted the argument that Howard's claims were derivative. The basis of this decision was the court's view that Howard's claims were premised on the diminution in the value of his stock due to the wrongdoing of the two defendant directors. Howard appeals the order granting the motions to intervene and to dismiss.

Haddad and McMullin then sought sanctions under F.R.Civ.P. 11 against Howard and his counsel on the grounds that Howard's claims were clearly derivative and, therefore, that the filing of the complaint was based on an inadequate pre-filing investigation. The district court determined that neither Howard nor his counsel pursued the matter in bad faith, and sanctions were denied. Haddad and McMullin cross-appeal.

## II

On appeal, Howard contends that his claims are not derivative because the fraud allegations focus only on the inducement to buy the stock and not on the reasons for the diminution in value. The FDIC counters that the claims are derivative because they involve an injury common to all shareholders arising out of the worthlessness of the stock. The FDIC also argues that even if the claims are not derivative, it should be accorded "absolute priority" over claims such as Howard's that seek to recover from the same assets that the agency might look to in seeking to maximize recovery to the insolvent Bank's creditors and shareholders. Haddad and McMullin contend in their cross-appeal that the district court used an improper standard of review in denying their sanctions requests. We turn first to whether Howard's claims are derivative.[1]

In his initial complaint, Howard included RICO claims which did seek damages for the decrease in the stock value brought on by mismanagement of the Bank. Acknowledging that the RICO counts might be derivative, Howard amended his complaint and limited his claims to a Rule 10b–5 count[2] and two similar state law counts against Haddad and McMullin only.[3] Each of these counts was premised on alleged misrepresentations by McMullin and Haddad that were intended to induce Howard to purchase stock in the bank. We believe that the amended complaint clearly raises direct, non-derivative claims against the two directors.

A derivative action is one "in which the right claimed by the shareholder is one the corporation could itself have enforced in court." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 529, 104 S.Ct. 831, 835, 78 L.Ed.2d 645 (1984). In other words, an action is derivative if it seeks damages arising from an injury *to* the corporation. Each shareholder of the Bank may well have a valid cause of action against the directors for the decline in the stock's value, and such action would clearly be derivative. However, the FDIC mistakenly and persistently characterizes Howard's claims as also premised on corporate mismanagement. The reasons for the alleged worthlessness of the stocks pur-

---

1. Howard also appeals the decision to permit intervention. Under Fed.R.Civ.P. 24(b), permissive intervention was unquestionably proper in this case, and that portion of the district court's order is affirmed.

2. Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5

thereunder (17 C.F.R. § 240.10b–5) make it unlawful for any person to misrepresent a material fact in connection with the sale of any security.

3. Code of Virginia § 13.1–522 and Florida Stat. § 812.014.

chased by Howard in September and October 1986 are essentially irrelevant to his claims. What is essential is his allegation that the defendants knew of the lack of value, yet fraudulently represented to Howard that the bank was in fine shape. Generally speaking, the measure of Howard's damages, should he prevail on his Rule 10b–5 claim, is the difference between what he paid and what the stock was worth on the day he paid it. *See Randall v. Loftsgaarden*, 478 U.S. 647, 661–62, 106 S.Ct. 3143, 3151–52, 92 L.Ed.2d 525 (1986). There is no compensable injury to the corporation in this situation, and Howard's claims cannot be said to derive from any claim also possessed by other shareholders. The mere fact that Howard and the FDIC are pursuing the same source of assets does not transform Howard's action to a derivative one.

### III

■ Although not relied upon by the district court in its decision to dismiss Howard's claims, the FDIC contends, as it did below, that the "absolute priority" rule entitles it to first claim on the assets of McMullin and Haddad, even if Howard's claims are non-derivative. This rule would accord to the FDIC, as the party standing in the shoes of general creditors vis-a-vis the Bank, priority over shareholders with respect to assets of the officers of the Bank. As such, the "absolute priority" argument is more properly addressed to a motion to stay the proceedings or the execution of judgment rather than to a motion to dismiss the complaint. Nevertheless, the issue is raised as an alternative ground upon which the dismissal might be affirmed, and we believe the issue should be reached at this point in the litigation.[4]

The FDIC again mistakenly characterizes Howard's claims as those of a shareholder that are no different from the claims of any other shareholder damaged by the mismanagement of the Bank. It then argues that Howard's claims on the assets of McMullin and Haddad are inferior to those of the Bank's general creditors because the FDIC has the duty to liquidate the Bank's assets and to satisfy creditors of all stripes in accord with the statutory priorities. See 12 U.S.C. § 1821(d)(11)(B) (shareholders paid after all other claims and expenses). Howard's claims on the defendants' assets do not, however, arise out of his status as a Bank shareholder; again, it was the allegedly fraudulent inducements to buy the stock that form the basis of his claims. We cannot see why the fact of liquidation should somehow act to deprive Howard of these causes of action.

In ruling as we do on this issue, we expressly adopt the analysis contained in *FDIC v. Jenkins*, 888 F.2d 1537 (11th Cir. 1989). Rejecting a similar priority argument, the Eleventh Circuit responded:

> Of course, it would be convenient to the FDIC to have an arsenal of priorities, presumptions and defenses to maximize recovery to the insurance fund, but this does not require that courts must grant all of these tools to the FDIC in its effort to maximize deposit insurance fund recovery. Any rule fashioned must have its base on the goal of effectuating congressional policy. We are not convinced Congress considered collections against parties such as the bank-related defendants in this case as a necessary part of the recovery to the deposit insurance fund. Any such priority over third-party lawsuits will have to come from Congress, not this Court.

*Id.* at 1546.

### IV

In view of our judgment with respect to the non-derivative nature of Howard's claims, it is clear that the defendants' request for sanctions has been severely undercut, at least insofar as their request is based on their claim of a lack of any rea-

---

4. Contrary to the FDIC's assertion, this Circuit has never adopted the absolute priority rule in a similar context. The decisions in *FDIC v. American Bank Trust Shares, Inc.,* 412 F.Supp. 302 (D.S.C.1976), *vacated and remanded,* 558 F.2d 711 (4th Cir.1977), *on remand,* 460 F.Supp. 549 (D.S.C.1978), *aff'd,* 629 F.2d 951 (4th Cir.1980), do not hold otherwise; see *FDIC v. Jenkins,* 888 F.2d 1537, 1542 (11th Cir.1989).

sonable legal underpinning for Howard's fraud claims. Inasmuch as the litigation will now be permitted to proceed further, the defendants are of course free to renew their motions at such later time when and if their contentions regarding the material falsity of the complaint's factual allegations are borne out. Their contention that the court abused its discretion in denying sanctions with regard to the inclusion of the later-abandoned RICO claims in the initial complaint is not well-taken. At least one appeals court has held that a RICO cause of action could exist under somewhat similar circumstances. *See Roeder v. Alpha Industries*, 814 F.2d 22, 29 (1st Cir. 1987). The order denying sanctions is affirmed.

## V

In sum, we hold that Howard's first amended complaint asserts direct, non-derivative claims against McMullin and Haddad because such claims allege injuries arising out of the sale of the stock, and not out of the causes for the diminution of the stock's value. We further hold that the FDIC does not, in its capacity as liquidator of the bank, have an "absolute priority" over Howard's claim on the assets of McMullin and Haddad. We therefore reverse the judgment below dismissing the complaint and remand for further proceedings.

We affirm the denial of sanctions which is the subject of the cross-appeal.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED