**Robert N. GREENFIELD, et al., Plaintiffs,**

**Resolution Trust Corporation, Intervening Plaintiff,**

v.

**Gerald G. SHUCK, et al., Defendants.**

**Civ. A. Nos. 91–11078–WGY, 91–11016–WGY.**

United States District Court, D. Massachusetts.

Oct. 19, 1994.

Evans J. Carter, Kassler & Feuer, P.C., Boston, MA, for Robert N. Greenfield, E.S. Goldman, Myles Arthur Franklin, Everett A. Shekleton, Thomas L. O'Connor, Curtis E. Dorrie, Agnes A. Miller, Nancy R. Meinken, Fern Louise Kroll, Barry N. Gibson.

John A.D. Gilmore, Hill & Barlow, Boston, MA, for American Cas. Co. of Reading, Pennsylvania.

Paul J. Murphy, Duncan S. Payne, Cuddy, Lynch, Manzi & Bixby, Deborah L. Thaxter, Peabody & Brown, Boston, MA, for Gerald G. Shuck, Howard F. Whelden, Paul F. Butler, Louis P. Drinkwine, Bruce C. Williams, Paul M. White, Anita M. Bolduc, Rita A. Garbitt, Beverly Wood, Judith Carpenter,

Lois Gagnon, Peter Kropp, Dorothy Zakarian, Sabra C. Ramsdall, Eldredge Sparrow, John Abreau, Philip J. Assiran, Arthur G. Baronousky, Wilton B. Crosby, Jr., John A. Drew, Edward D. Duffy, Walter H. Fish, Jr., Walter L. Marchant, Thomas B. Powers, Winthrop V. Wilbur, Jr.

Deborah L. Thaxter, Peabody & Brown, Boston, MA, for Richard L. Rowe, Jr., Augustine F. Gouveia, Richard A. Dusseault, Joan M. Griffin, Matthew J. Sylvia, Diane Thibeault, Peter Pollack, Joseph C. Murray.

Paul J. Murphy, Duncan S. Payne, Cuddy, Lynch, Manzi & Bixby, Deborah L. Thaxter, Peabody & Brown, Boston, MA, Nicholas B. Soutter, Wellesley, MA, for Milton M. Gray, Jr.

Deborah L. Thaxter, Peabody & Brown, Boston, MA, Philip M. Boudreau, Hyannis, MA, for Edward Kelly, Jr.

Christian M. Hoffman, Foley, Hoag & Eliot, Deborah L. Thaxter, Peabody & Brown, Boston, MA, for Wolf & Co. of Massachusetts, P.C.

Judith K. Wyman, Roche, Carens & DeGiacomo, Deborah L. Thaxter, Peabody & Brown, James R. DeGiacomo, Roche, Carens & DeGiacomo, Boston, MA, for Edward F. McLaughlin, Jr.

Mary Jane Yoemans, pro se.

James H. Wexler, Kotin, Crabtree & Strong, Boston, MA, for William A. Welch, Martin E. Fishkin, Barret C. Nichols, Jr.

Diana L. Varjabedian, pro se.

Robert S. Troy, Bourne Town Counsel, Sandwich, MA, for Sabina Troy.

Paula J. Sweetman, pro se.

Michael B. Stusse, Ardito, Sweeney, Stusse, Robertson & Dupuy, West Yarmouth, MA, for John P. Stukas, Elizabeth D. Stukas, George G. Sowpel, Hester A. Armstrong, Wendy Buttrick, Alan A. Collette, Jr., Harrison T. Drew, Jr., Robert M. Fabiano, Stephanie A. Haddad, Elizabeth W. McSorley, Martha D. Miles, Carlene A. Rogean, Sentry Federal Sav. Bank, Sentry Sav. Bank, FSB.

Alan D. Stevens, pro se.

H. Alfred Yonce, Orleans, MA, for Mary L. Smith.

John T. Aylward, pro se.

Robert F. Barry, pro se.

Barry E. Burden, pro se.

Jane C. Caron, pro se.

Daniel D. Dodge, pro se.

Elyse D. Cherry, Hale & Dorr, Boston, MA, for Karen L. Etsell.

Megan Holway, pro se.

Anthony J. LaRocco, pro se.

Marcy L. Long, pro se.

Francis J. Lucey, Jr., pro se.

Deborah P. Robbins, pro se.

Deane B. Sawyer, pro se.

Kevin F. Moloney, Alison L. Berman, Barron & Stadfeld, Boston, MA, for Resolution Trust Corp.

Kevin F. Moloney, Alison L. Berman, Barron & Stadfeld, Boston, MA, Michael B. Stusse, Ardito, Sweeney, Stusse, Robertson & Dupuy, West Yarmouth, MA, for Office of Thrift Supervision.

Peter Pollock, pro se.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

#### I.

The plaintiffs, Robert N. Greenfield and approximately two-hundred other purchasers of Subordinated Capital Notes ("Greenfield" or "Greenfield plaintiffs"), bring this action against the defendants, various officers and directors of Sentry Federal Savings Bank ("Old Sentry" or "Bank") to recover monetary damages incurred by them as a result of the failure of the Bank. The Greenfield plaintiffs allege the following claims: fraud and deceit (Count I); aiding and abetting harm to third parties (Count II); negligent misrepresentation (Count III); breach of fiduciary duty (Count IV); violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. (Count V); and a federal securities law claim (Count VI).[1] (Third Substitute Complaint and Jury Claim.)[2]

On September 21, 1990, the Director of the Office of Thrift Supervision, Department of the Treasury ("Director"), closed Old Sentry and appointed the Resolution Trust Corporation (the "RTC") as receiver. On that same day, the Director appointed the RTC as conservator of the newly chartered New Sentry. Upon the closing of Old Sentry, the RTC as receiver of Old Sentry entered into a purchase and assumption agreement with the RTC as conservator of New Sentry whereby New Sentry acquired certain assets and accepted certain liabilities of Old Sentry.[3]

On July 24, 1991, this Court allowed the RTC, as receiver of Old Sentry and conservator of New Sentry, to intervene as a plaintiff herein. The RTC immediately moved to stay prosecution of the Greenfield plaintiffs' claims on grounds that it owns all derivative claims and has priority over all non-derivative claims. This Court refused to act upon the motion to stay, pending the outcome of the defendants' Motion to Dismiss. The RTC appealed.[4]

---

**1.** Although not reflected in the Third Substitute Complaint, this Court has allowed plaintiff's Motion to Reinstate their claim of violation of Section 10b of the Security Exchange Act of 1934 as Count VI. *See Greenfield v. Shuck*, 856 F.Supp. 705 (D.Mass.1994).

**2.** The Greenfield plaintiffs have also filed a Third Substitute Class Action Complaint and Jury Claim. Having taken the motion for class certification under advisement, this Court now denies class certification in that there is no sufficient factual similarity in the representations made to these plaintiffs as would warrant class treatment. The individual actions may, however, proceed together as consolidated claims.

**3.** For a concise general description of a purchase and assumption transaction, see *Gaff v. Federal Deposit Ins. Corp.*, 919 F.2d 384, 385 n. 1 (6th Cir.1990) (*Gaff II*).

**4.** The RTC appealed the action by this Court, but the appeal was denied for lack of appellate jurisdiction. *See Greenfield v. Shuck*, No. 91–2011 (1st Cir. Nov. 27, 1991). This case is actually a renewed motion to stay, and the RTC's renewed motion relies upon and incorporates its earlier memoranda.

On August 15, 1991 this Court allowed the defendants' motion to dismiss in part, dismissing what was then Count II (alleging violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10(b)(5) and Count IV (alleging aiding and abetting violation of the Federal Securities Laws), pursuant to the United States Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis, & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), *superseded by statute*, 15 U.S.C. § 78aa–1 (1991).

After the denial of the RTC's appeal, this Court held a hearing on the motion to stay prosecution on January 8, 1992, and took the matter under advisement. Nevertheless, in February of 1992, Greenfield filed a motion to submit a Third Amended Complaint, moving to reinstate the federal securities claims pursuant to 15 U.S.C. § 78aa–1 (1991). This Court again decided to withhold action upon the motion to stay until it had completed the disposition of the issues surrounding the motion to amend. The motion to amend was granted as to Count Two (violations of section 10[b]) of the original complaint which Count is now treated as Count II of the Third Amended Complaint. *See Greenfield v. Shuck*, 856 F.Supp. 705 (D.Mass.1994). The count asserting aiding and abetting liability was not reinstated. *See Central Bank of Denver v. First Interstate Bank of Denver*, —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (holding that private plaintiff may not maintain aiding and abetting suit under Securities Exchange Act § 10[b] ).

Having thus resolved all issues surrounding the pleadings, this Court now turns to the RTC's motion to stay.

## II.

The Court is here asked to resolve whether the RTC or the Greenfield plaintiffs are entitled to a priority in assets of the defendant officers and directors when both the RTC and the purchasers of securities have claims against these officers and directors.[5] In determining whether to grant the RTC's motion to stay, two questions must be answered. First, are the claims asserted by the Greenfield plaintiffs derivative claims and therefore owned by the RTC? Second, even if the claims are not derivative, is the RTC entitled to an absolute or contractual priority?

### 1. *Derivative vs. Direct Claims*

■ It is well settled that when the RTC takes over a failed banking institution as receiver, it becomes the owner of any derivative claims which may be asserted by stockholders. *See e.g., In re Sunrise Securities Litigation*, 916 F.2d 874, 882 (3d Cir.1990) (claims based on injuries primarily to the financial institution belong to the financial institution initially through its receiver); *Federal Deposit Ins. Corp. v. American Bank Trust Shares, Inc. (ABTS)*, 412 F.Supp. 302, 306 (D.S.C.1976) (when a bank fails, claims for loss due to its mismanagement belong to the receiver and may be sold like any other asset), *vacated on other grounds*, 558 F.2d 711 (4th Cir.1977). When Old Sentry was closed, the RTC as conservator of New Sentry acquired the right to such claims through a purchase and assumption agreement with the RTC as receiver of Old Sentry.[6]

The RTC argues that Greenfield's claims are, in essence, allegations that the directors and officers mismanaged Old Sentry and that because of this mismanagement, Old Sentry failed and the subordinated capital notes diminished in value. The RTC asserts that because mismanagement of the bank damages all creditors and depositors and not

---

**5.** Although the RTC has not actually brought claims against the officers and directors, it has filed a complaint seeking a declaratory judgment that its claims have priority.

**6.** Pursuant to this agreement, New Sentry acquired any
 [a]ction, judgment or claim of the Receiver against (a) any officer, director, employee, ac-

countant, attorney [or others] employed or retained by [Old Sentry] on or prior to [Old Sentry's] Closing arising out of any act or omission of such [p]erson in such capacity (Purchase and Assumption Agreement, Article III, Section 3.1[o], Sept. 1, 1990; RTC Motion to Stay, Exhibit A.)

uniquely the holders of subordinated capital notes, no direct action may be brought.[7]

The Third Circuit has recently considered the legal limitations on the rights of depositors to assert individual RICO claims against the officers and directors of a failed savings and loan rather than to recover their losses through a derivative suit or through the receiver's actions. *See In re Sunrise Securities Litigation,* 916 F.2d at 875. In that case, the plaintiffs were depositors with interest-bearing accounts seeking recovery of their uninsured deposits. They contended, *inter alia,* that the officers and directors failed to disclose that the Savings & Loan was neither financially secure nor well-managed. *Id.* at 882–83.

The Third Circuit rejected plaintiffs' individual claims, holding that their claims were not claims of direct injury from fraud and thus their claims were not distinct from the injury suffered by the Savings & Loan and other depositors as a result of defendants' mismanagement.

> Although the allegations are cast in terms of defendants' misrepresentations of and failure to disclose information, we believe that *under the distinct circumstances of this case,* such allegations do not state a claim of direct injury founded on fraud.... The asserted injury emanated from mismanagement, not fraud.... [T]he depositors' loss cannot be separated from the injury suffered by the institutions and all other depositors, and the damages recoverable are assets of the institutions.

*Id.* at 883 (emphasis added). The court determined that in this instance the loss in value of plaintiffs' certificates reflected the impaired condition of the financial institution as a whole.

> In our view, the fact that the officers' and directors' alleged fraud may have induced all of the depositors to make their original deposits does not justify bypassing this equitable and common-sense system for recovery, especially in circumstances like these, where all the depositors' losses are inextricably linked to the insolvency of [the financial institution].

*Id.* at 887.

Although the Third Circuit held that the claims at issue in *Sunrise Securities* were derivative and therefore owned by the RTC, the court distinguished the particular facts of the case before it from one where officers personally misrepresented the bank's financial condition directly to an individual depositor. *Id.* at 883–84 ("A non-derivative action may be maintained where the injury was sustained by a depositor as an individual, independent of any injury to the bank or other depositors."). Thus, the court emphasized that its ruling was not inconsistent with the Eleventh Circuit's holding in *Federal Deposit Ins. Corp. v. Jenkins,* 888 F.2d 1537 (11th Cir.1989) which held that the FDIC is not entitled to a priority merely by virtue of its status as insurer of a failed bank. The Third Circuit explained that, "[t]o the extent that depositors assert individual, nonderivative fraud claims against the officers, directors, auditors, or attorneys of insolvent financial institutions, they may proceed on equal footing with FDIC against these defendants." *Sunrise Securities,* 916 F.2d at 889.

The Sixth Circuit has also acknowledged that under certain circumstances, a shareholder may assert direct claims against the officers and directors of a failed bank.

> A suit for damages arising from an injury to the corporation can only be brought by the corporation itself or by a shareholder

---

7. Some courts treat the question of whether or not a claim is derivative as a question of state law. *See, e.g., In re Sunrise Securities Litigation,* 916 F.2d at 880–82 (applying Florida law); *Crocker v. Federal Deposit Ins. Corp.,* 826 F.2d 347, 349–52 (5th Cir.1987) (applying Mississippi law), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988); *ABTS,* 412 F.Supp. at 306 (applying South Carolina law). Other courts have cited federal cases and general principles of corporate law to decide the question. *See, e.g., Howard v. Haddad,* 916 F.2d 167, 169–70 (4th Cir.1990); *Gaff II,* 919 F.2d at 388; *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 29–30 (1st Cir. 1987); *Hurley v. Federal Deposit Ins. Corp.,* 719 F.Supp. 27, 30 (D.Mass.1989) (Tauro, J.). This Court will rely on the general principles of corporate law expressed in all the above cases since they do not differ on this point from each other or from Massachusetts law. *See, e.g., Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C.,* 405 Mass. 506, 513, 541 N.E.2d 997 (1989) (harm to corporation must be asserted through derivative action).

derivatively if the corporation fails to act.... There is, however, a well recognized exception to this rule.... *"[W]here the shareholder suffers an injury separate and distinct from that suffered by other shareholders,"* or the corporation as an entity, *the shareholder may maintain an individual action in his own right....* A depreciation or diminution in the value of a shareholder's corporate stock is generally not recognized, however, as the type of direct, personal injury which is necessary to sustain a direct cause of action.

*Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 315 (6th Cir.1987) (*Gaff I* ) (citations omitted) (emphasis added).

In *Howard v. Haddad,* 916 F.2d 167 (4th Cir.1990), the Fourth Circuit faced circumstances similar to those in the instant case. In *Howard,* a shareholder brought claims against the directors of a failed bank alleging that the officers induced him to purchase shares in the bank without disclosing the bank's precarious financial situation. *Id.* at 168. Howard's initial complaint contained some claims for mismanagement of the bank which led to a decline in the stock's value and ultimately the bank's takeover by the FDIC. *Id.* After being advised that the FDIC regarded these claims as derivative, Howard amended his complaint.[8] *Id.* The remaining claims were a single federal securities claim and two state fraud claims. *Id.* at 168–69. The essence of Howard's claim was similar to Greenfield's claim now before this Court, i.e., that the bank's directors misrepresented the bank's condition in an effort to secure badly needed capital.

The Fourth Circuit first determined that Howard's claims were not derivative and then determined that the FDIC was not entitled to an absolute priority. "A derivative action is one 'in which the right claimed by the shareholder is one the corporation could itself have enforced in court.' In other words, an action is derivative if it seeks damages arising from an injury *to* the corporation." *Id.* at 169 (citation omitted) (emphasis in original). The court determined that

Howard's claims were not based on mismanagement and that the reasons for the worthlessness of the stocks were irrelevant. *Id.* at 169–70.

What is essential is [Howard's] allegation that the defendants knew of the lack of value, yet fraudulently represented to Howard that the bank was in fine shape.... The mere fact that Howard and the FDIC are pursuing the same source of assets does not transform Howard's action to a derivative one.

*Id.* at 170.

■ The claims asserted by Greenfield in the instant case fit the definition of direct, non-derivative claims described in *Howard* and *Sunrise Securities.* The Greenfield plaintiffs have alleged that numerous personal assurances were given to induce them to withdraw funds from deposit accounts to purchase the Subordinated Capital Notes. (*See* Third Substitute Complaint and Jury Claim, at ¶¶ 42–44.) The injuries suffered by these plaintiffs are sufficiently distinct from any injury to the corporation as a whole. For the above reasons, this Court rules that the claims asserted in Greenfield's Third Substitute Complaint are not derivative claims. *See ABTS,* 412 F.Supp. at 308 (purchasers of subordinated capital notes own personally any action for alleged fraud and deceit against officers and directors of failed bank).

### 2. *Priority*

The RTC next argues that even if Greenfield's claims are non-derivative, the RTC deserves a priority in seeking to recover the assets of bank officers. The RTC urges this Court to adopt the reasoning in *Gaff v. Federal Deposit Ins. Corp. (Gaff II),* 919 F.2d 384, 391–96 (6th Cir.1990), and create a federal common law priority in favor of the RTC over the Greenfield plaintiffs' claims. In *Gaff II,* a stockholder of a bank filed suit in state court shortly before the bank failed asserting both derivative and direct actions under state law. *Id.* at 386. When the bank failed, the FDIC took over as receiver and removed the action to federal court. *Id.*

---

**8.** Although one of the claims which Howard dropped as a derivative claim was a RICO claim, it was unlike the Greenfield plaintiffs' RICO claim because it was premised on a pattern of mismanagement, rather than a pattern of fraudulent conduct. *See Howard,* 916 F.2d at 168–69.

The derivative claims were stayed until the FDIC's claims were resolved. *Id.* Gaff then amended his complaint to include federal securities law claims, which were subsequently dismissed with prejudice because of Gaff's failure to allege a sufficiently distinct injury. *Id.* The district court maintained jurisdiction over the direct state claims. *Id.*

On appeal, the Sixth Circuit first determined that federal law applied to the dispute and that the creation of federal common law was appropriate. *Id.* at 391. The court then addressed the right of a corporation, through its receiver, to pursue actions against its officers and directors when the stockholders simultaneously sue under a theory of direct action to recover against the same officers and directors. The court ruled that the FDIC deserved a priority based on (1) the law of corporate dissolutions and bankruptcy, and (2) the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, § 401, 103 Stat. 183, 354–57 (1989).

First, the Sixth Circuit observed that stockholders, unlike debt investors, benefit when a corporation succeeds and must therefore bear the burden if it fails. *Id.* at 392. The court considered this relevant even where the assets sought are not those of the corporation but those of the individual directors and officers. *Id.* Second, the court found the situation before it analogous to the principle of equitable subordination in bankruptcy recognized in *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) and section 510(c) of the Bankruptcy Code. "If particular creditors or stockholders can show no injury unique or peculiar to themselves but one that affects creditors, stockholders and the corporation generally, then the corporation is given priority and the

creditors' rights are subordinated." *Gaff II,* 919 F.2d at 393. The doctrine permits a court to look at the overall fairness of a claim compared to others and to subordinate those claims with less fairness behind them. The court reasoned that the mismanagement of the bank hurt the bank as a whole including its general creditors and depositors, i.e., the "entire community of interests in the corporation" not just the stockholders. *Id.* at 394. The court conceded that the principle of equitable subordination did not govern bank failures but ruled it was persuasive. *Id.* at 393. The court reasoned that any collection by the FDIC might eventually help Gaff as well.[9] The court also thought it important that the doctrine did not disallow the claims but only subordinated them within a set of priorities. *Id.* at 394.

Next, the Sixth Circuit reasoned that under FIRREA, the FDIC is subrogated to the claims of depositors.[10] *Id.* at 394 n. 8. Since depositors have greater rights than shareholders, the FDIC succeeds to this greater priority. The court noted that 12 U.S.C. § 1815(e) (1991), while not controlling, also provides an analogous situation whereby shareholders are placed "at the end of the line to recover from otherwise solvent third parties."[11] *Gaff II,* 919 F.2d at 395. The statutory scheme goes even further by creating an ability to preclude other actions (e.g., the stay in bankruptcy). *Id.* The Sixth Circuit reasoned that this priority scheme shows Congress' understanding of how priorities work in settings involving claims against solvent third parties when both the FDIC and stockholders assert such claims. *Id.* at 395. The court concluded, therefore, that "the FDIC's claims against the Bank's officers and directors should receive a priority over [the stockholder's] claim." *Id.*

---

**9.** It is unlikely that a collection by the RTC in the instant case would help Greenfield since the assets here, even if the RTC is able to realize upon them, are quite limited. *See American Casualty Co. of Reading Pennsylvania v. Sentry Federal Savings Bank, et al.,* 867 F.Supp. 50 (D.Mass. 1994).

**10.** 12 U.S.C. § 1821(g) (1991) states:

Notwithstanding any other provisions of Federal law, the law of any State, or the con-

stitution of any State, the [FDIC], upon the payment [of insurance proceeds] to any depositor ... shall be subrogated to all rights of the depositor against such institution or branch to the extent of such payment or assumption.

**11.** 12 U.S.C. § 1815(e)(2)(C) states:

(i) Superiority
The liability of any insured depository institution ... shall be superior to ...
(I) Any obligation to shareholders....

The Sixth Circuit noted that the legislative history of FIRREA shows that Congress considered dealing specifically with this issue. The Senate considered a provision that would have granted the FDIC a priority similar to the one the court created in *Gaff II*. The provision read:

> In any proceeding related to any claim acquired under section 11 or 13 of this Act against an insured financial institution's director, officer, employee, agent, attorney, accountant, appraiser, or any other party employed by or providing services to any insured financial institution, any suit, claim, or cause of action brought by the Corporation shall have priority over any such suit, claim, or cause of action asserted by depositors, creditors, or shareholders of the insured financial institution.... This priority shall apply to both the prosecution of any suit, claim, or cause of action, and to the execution of any subsequent judgments resulting from such suit.

*Id.* (quoting S. 774, 101st Cong., 1st Sess. § 214[o][1] [1989]). The court, however, did not interpret Congress' failure to include this provision in FIRREA as a rejection of any priority for the FDIC. *Compare Federal Deposit Ins. Corp. v. Jenkins*, 888 F.2d 1537, 1538 n. 1 (11th Cir.1989) (refusing to create an absolute priority for the FDIC because of, *inter alia*, legislative history). Instead, the Sixth Circuit viewed this as evidence of congressional intent that the law of priorities in bank receiverships develop on a case-by-case basis in the courts. *Gaff II*, 919 F.2d at 396.

Although the *Gaff II* court disagreed with some aspects of the *Jenkins* court's analysis,[12] it distinguished the opinion on its facts. The *Gaff II* court found it significant that the cause of action in *Jenkins* was created by a federal statute (federal securities law), thus raising the plaintiffs' claims there to a more equal footing with the priorities in FIRREA than was the case with state claims. *Id.* at

396. The court also found it significant that the bank in *Jenkins* was state not federally chartered thus altering the rationale for a federal priority.[13] *Id.* The Sixth Circuit held:

> In actions against the officers and directors of a defunct bank, the FDIC should receive a priority over the claims of stockholders. We establish this priority because of the general policy of allowing others to take from the estate of a dissolved corporation before stockholders and because of the national policy of protecting the banking system through the FDIC. This priority does not mean that the FDIC owns the stockholders' causes of action against the officers and directors. It only delays the direct actions pending against the officers and directors until the FDIC's case is fully litigated and settled.

*Id.* at 396. The court stayed all the stockholders' claims until the FDIC's claims were adjudicated. *Id.* at 397.

The First Circuit has not considered this precise issue. The majority of other courts that have considered the issue, however, have declined to create an absolute priority for the FDIC. In *Jenkins*, the Eleventh Circuit held that the FDIC is not entitled to an absolute priority to assets of officers, directors and other third parties who may have been responsible for the failure of a bank. *Jenkins*, 888 F.2d at 1538. Plaintiffs in that action were shareholders of the bank who brought state and federal securities law and RICO claims against officers and directors of the failed bank. *Id.* The FDIC brought claims for negligence and breach of fiduciary duty against substantially similar defendants for harm to the bank. *Id.* The FDIC also brought a separate action seeking a declaratory judgment that "as a general creditor of [the bank] and assignee of any causes of action owned by [the bank], the FDIC's claims against the officers, directors and oth-

---

**12.** The court commented that the Eleventh Circuit may have weighed too lightly the large body of federal law that expands the powers of the FDIC beyond those specifically granted by Congress. *Gaff II*, 919 F.2d at 396.

**13.** In the instant case, Greenfield is proceeding on federal RICO claims as well as federal securi-

ties law claims, *see Greenfield v. Shuck*, 856 F.Supp. 705 (D.Mass.1994) (allowing motion to reinstate securities law claim), placing it more on the same footing as *Jenkins*. Unlike *Jenkins*, however, Old Sentry was federally chartered, not state chartered.

er defendants should have priority over the shareholder's [sic] claims against the parties." *Id.* at 1538–39.

First, the Eleventh Circuit decided that the FDIC's role as insurer of bank deposits did not warrant granting it a priority. *Id.* at 1544. The court found that the record did not support the FDIC's argument that the prospect of collecting judgments against bank-related defendants is an important factor in performing the "cost test" analysis used to decide whether to proceed with a purchase and assumption transaction or to proceed with liquidation. *Id.* at 1540 n. 4. More importantly, the court reasoned that because Congress decided against creating such a priority and because no such priority is found in the Federal Deposit Insurance Act, none was intended. The court stated:

> We agree that the preservation of the permanent insurance fund is vital to the continued health of the nation's banking system. The FDIC should take all feasible measures authorized in the Federal Deposit Insurance Act to maximize recovery to the fund. We cannot, however, approve of judicial expansion of the express powers and rights granted to the FDIC in the Act by Congress.

*Id.* at 1541. Also, the court noted that establishing a priority would be a disincentive to private fraud suits and would harm the enforcement scheme. *Id.* at 1540 n. 5.

Second, The Eleventh Circuit refused to apply the concept of equitable subordination to create a federal common law priority in favor of the FDIC. *Compare Gaff II*, 919 F.2d at 393 (borrowing the concept of equitable subordination from the bankruptcy context). The court observed that 11 U.S.C. § 510(b) (1988) of the Bankruptcy Code provides that shareholders attempting to collect against solvent third-parties in non-derivative shareholder suits may proceed on an equal status with general creditors. Indeed, the express terms of the statute only subordinate

claims against the debtor or affiliate of the debtor, not third-parties.[14] *Jenkins*, 888 F.2d at 1544–45. Also, the court ruled it inappropriate to fashion a common law rule of priority when the Federal Deposit Insurance Act does not compel the FDIC to pursue claims to restore the deposit insurance fund against third-parties who may have harmed a failed bank.

> Of course, it would be convenient to the FDIC to have an arsenal of priorities, presumptions and defenses to maximize recovery to the insurance fund, but this does not require that courts must grant all of these tools to the FDIC in its effort to maximize deposit insurance fund recovery.

*Id.* at 1546. In essence, the court ruled that because Congress had not voiced an intention to create such a priority, such a judicial gloss was unwarranted.

In *Howard v. Haddad*, 916 F.2d 167, 168 (4th Cir.1990), the Fourth Circuit adopted the *Jenkins* analysis. In that case, a shareholder brought claims against the officers and directors of a failed bank alleging that he was fraudulently induced to buy stock. Like the instant case, the claims were non-derivative claims founded on fraud not mismanagement. Nevertheless, the FDIC argued that 12 U.S.C. § 1821(d)(11)(B) (1991) granted it the duty to liquidate the bank's assets and satisfy creditors ahead of shareholders. The Fourth Circuit declined to confer a preferred status on the FDIC.

> Howard's claims on the defendants' assets do not ... arise out of his status as a Bank shareholder; again, it was the allegedly fraudulent inducements to buy the stock that form the basis of his claims. We cannot see why the fact of liquidation should somehow act to deprive Howard of these causes of action.

*Id.* at 170. The court then expressly adopted the holding in *Jenkins*.

---

14. 11 U.S.C. § 510(b) (1988) provides:

For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

The Third Circuit faced similar issues in *Hayes v. Gross*, 982 F.2d 104 (3rd Cir.1992). Shareholders of the insolvent Bell Street Bank brought securities fraud actions against former directors and officers. The District Court dismissed the case pursuant to Rule 12(b)(6), but was reversed by the Third Circuit which took the opportunity to review issues raised by the RTC in an amicus brief. Expressing in *dicta* its intent to follow the decisions of the Fourth and Eleventh Circuits the court stated:

> This Court appears to have aligned itself with the Courts of Appeals for the Eleventh and Fourth Circuits. In *Sunrise*, we commented favorably on the reading of FIRREA's legislative history in *Jenkins*, and observed that if the depositor-plaintiffs in *Sunrise* had been pursuing "individual, non-derivative fraud claims against the officers [and] directors ... they [could] proceed on an equal footing with FDIC against these defendants."

*Hayes*, 982 F.2d at 109 n. 5 (quoting *In re Sunrise Securities Litigation*, 916 F.2d 874, 889 [3rd Cir.1990] ). Furthermore, the court expressly rejected a statutory policy argument put forward by the RTC that the private enforcement of securities fraud actions would impair the ability of the RTC to carry out its duties under FIRREA to maximize recovery for the insurance fund.

> We believe the RTC's statutory policy argument is, in essence, a claim that Congress, in enacting FIRREA, impliedly amended the Exchange Act so as to subordinate the latter to the former. We find nothing in the text or legislative history of FIRREA to support this proposition and therefore reject it.

*Hayes*, 982 F.2d at 110.[15] *See also Sunrise Securities*, 916 F.2d at 889 (affirming dismissal of derivative claims but stating that individual, non-derivative fraud claims against officers and directors of insolvent financial institutions may proceed on equal footing with the FDIC).

■ Based on the reasoning in the Third, Fourth, and Eleventh Circuits, this Court declines to award an absolute priority to the RTC in these circumstances.

**15.** The Third Circuit's ruling in *Hayes* was presaged by the thorough opinion of Judge Kelly of the Eastern District of Pennsylvania, who found the Eleventh Circuit's reasoning in *Jenkins* to be very persuasive. In *In re Atlantic Financial Federal Securities Litigation*, No. 89–0645, 1991 W.L. 98757 (E.D.Pa. May 29, 1991), plaintiffs brought federal securities fraud claims and pendent state negligent misrepresentation claims against officers and directors of Atlantic Financial Federal. *Id.* at *1. The RTC moved to stay the claims asserting that it had priority. *Id.* The RTC argued that its power to preserve and conserve assets of the institution would be meaningless if plaintiffs were allowed to "waste" the officers' and directors' insurance policy. *Id.* Also, the RTC argued that shareholders should come last in the disbursement because they bargained for the risk of losing their money when they bought the stock. *Id.*

The district court relied on the legislative history of FIRREA, cited in *Jenkins*, as showing that Congress did not intend such a priority. *Id.* The court also relied on the *Jenkins* court's reasoning that allowing such a priority would be a disincentive to private fraud suits and noted that leaving enforcement to government agencies would bring slow recoveries. *Id.* at *2. This argument is especially relevant in the instant case because the RTC has yet to file a claim against a former officer or director of Old Sentry. Also, even if the RTC had brought such a suit, insurance coverage will be denied the RTC because of certain exclusions in the directors' and officers' liability policy. *See American Casualty Co. of Reading, Pennsylvania v. Sentry Fed. Sav. Bank, et al.*, 867 F.Supp. 50 (D.Mass.1994) (consolidated with the instant case). Here, because the officers' and directors' insurance policy is a "wasting" policy, i.e., the costs of defense are deducted from the policy limits, giving the RTC priority status allows it to become a futile spoiler—pursuing, and thus diminishing the only readily-available asset even as it excludes these private plaintiffs from the race.

Judge Kelly followed an important distinction made by the *Jenkins* court between derivative suits brought by a shareholder on behalf of the corporation and lawsuits brought by stock purchasers who were allegedly fraudulently induced to purchase stock by the officers ad directors. [T]he risk discussed by the RTC normally bargained for by shareholders—that the officers or directors will mismanage the corporation—is not the problem about which the plaintiffs in this type of suit are complaining. Here, the plaintiffs are complaining that the officers and directors fraudulently induced them to purchase stock. *This type of risk is not bargained for when someone chooses to purchase stock, and should not be included in the calculus of priority among creditors to a corporation.* *Id.* at *2 (footnote omitted) (emphasis added). Accordingly, the court declined to grant a stay to the FDIC. *Id.* at *3.

The RTC argues in the alternative that it enjoys a contractual priority based on the language in the Subordinated Capital Note.[16] In support of its argument, the RTC relies on *Federal Deposit Ins. Corp. v. American Bank Trust Shares (ABTS)*, 412 F.Supp. 302 (D.S.C.1976), *vacated on other grounds*, 558 F.2d 711 (4th Cir.1977). In *ABTS*, the holder of a subordinated capital note brought fraud and deceit claims against directors and officers of a failed bank. Although rejecting an absolute priority for the FDIC, the district court ordered a stay of these non-derivative claims on the grounds that, while "the subordinated capital note-holders ... 'have a direct cause of action based upon alleged fraud and deceit involved in their purchase of the capital notes ...[,] [t]he subordinated capital notes, by their terms, were subordinate to the obligations of AB & T to its general creditors." *ABTS*, 412 F.Supp. at 307. The court reasoned that "[a]s a general rule, equity prefers the claims of innocent general creditors over the claims of shareholders or subordinated creditors deceived by officers of the corporation." *Id.* at 308. The court stated, however, that all parties would be given an opportunity to be heard on the issue of priority of the disbursement of funds recovered by any party. *Id.*[17]

The Greenfield plaintiffs argue that although the terms of the Subordinated Capital Notes subordinate them to a status inferior to depositors (in whose shoes the RTC stands), they are not bound by its terms. The Greenfield plaintiffs allege that they were fraudulently induced into purchasing the Notes and that the officers and directors of Old Sentry misrepresented the risk involved. (Third Substitute Complaint at ¶ 3). They assert that Old Sentry's officers and directors told them that the Notes were "as safe and secure as federally insured savings accounts or CDs [certificates of deposit]."

**16.** The face of the Subordinated Capital Notes states:

> THIS SECURITY IS NOT A SAVINGS ACCOUNT OR DEPOSIT, AND IT IS NOT INSURED BY THE FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION.

The reverse side of the Note states:

> PAYMENT OF PRINCIPAL AND INTEREST ON THIS NOTE IS SUBORDINATED UPON LIQUIDATION TO ALL CLAIMS AGAINST SENTRY HAVING THE SAME PRIORITY AS SAVINGS ACCOUNT HOLDERS OR ANY HIGHER PRIORITY.
>
> ....
>
> Subordinated Capital Notes are general obligations of Sentry and are not secured by the assets of Sentry or any of its affiliates.... Subordinated Capital Notes are subordinated to all claims against Sentry having the same priority as savings account holders or any higher priority.
>
> ....
>
> Notwithstanding anything to the contrary in this Capital Note ... (a) if FSLIC shall be appointed receiver for Sentry and in its capacity as such shall cause Sentry to merge with or into another insured institution, or in such capacity shall sell or otherwise convey part of all of the assets of Sentry to another insured institution or shall arrange for the assumption of less than all of the liabilities of Sentry by one or more other insured institutions, FSLIC shall have no obligation, either in its capacity as receiver or in its corporate capacity, to contract for or to otherwise arrange for the assumption of the obligation represented by this Capital Note in whole or in part.... To the extent that obligations represented by this Capital Note have not been assumed in full by an insured institution with or into which Sentry may have been merged, as described in this subparagraph (a), and/or by one or more of insured institutions which have succeeded to all or portion of the assets of Sentry, or which have assumed a portion but not all of the liabilities of Sentry as a result of one or more transactions entered into by FSLIC as receiver for Sentry, then the holder of this Capital Note shall be entitled to payments on this obligation in accordance with the procedures and priorities set forth in the Federal Home Loan Bank Board's regulations as they may be applicable to the receivership of Sentry or as they may be set forth in orders of the Federal Home Loan Bank Board relating to such receivership....

(RTC Memorandum in Support of Motion to Stay, Exhibit B.)

**17.** *ABTS* does not of itself create any priority for the FDIC. In *Howard*, the Fourth Circuit rejected the FDIC's attempt to rely on *ABTS* as creating an absolute priority rule where a shareholder brought claims of fraudulent inducement in buying stock. *Howard*, 916 F.2d at 170 n. 4. Similarly, in *Jenkins*, the Eleventh Circuit refused to follow *Harris v. Stanley*, Civil No. F 86–43 (N.D.Ind. Jan. 27, 1989), which had created an absolute priority for the FDIC, because *Harris* had relied on *ABTS* and *Palmer v. Metropolitan Bancorporation*, 1983 WL 144647, Case No. 82–141–T–WC (M.D.Fla. May 23, 1983), *appeal dismissed*, 751 F.2d 392 (11th Cir.1984) (noting the absolute priority rule), neither of which itself created a priority. *See Jenkins*, 888 F.2d at 1542.

(Third Substitute Complaint at ¶ 3.) What is more, they assert that in most cases offering circulars were not delivered to the potential purchasers and that the officers and directors represented that the Notes were federally insured. (Third Substitute Complaint at ¶¶ 3–5.)

When, as here, subordinated noteholders are allegedly fraudulently induced to purchase subordinated notes, their action against the officers and directors arises not from the contract represented by the security but from the tortious violation of statutory and common law norms. They ask recovery not against the assets of the corporation but against the tortfeasor themselves. The relative priorities established in the notes themselves are immaterial to such causes of action. Equity and common sense dictate this result. *See, e.g., In re Atlantic Fin. Fed. Sec. Litig.,* C.A. No. 89–0645, 1991 W.L. 98757 at *2 (E.D.Pa. May 29, 1991) (Kelly, J.) ("Here, the plaintiffs are complaining that the officers and directors fraudulently induced them to purchase stock. This type of risk is not bargained for when someone chooses to purchase stock, and should not be included in the calculus of priority among creditors to a corporation") (footnote omitted). *But see In the Matter of Stirling Homex Corp.,* 579 F.2d 206, 213–14 (2nd Cir. 1978) *cert. denied sub nom. Jezarian v. Raichle,* 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979) (relying on the principle of equitable subordination in bankruptcy in order to subordinate to the claims of general creditors the claims of stockholders who asserted they were fraudulently induced to purchase stock), and *ABTS,* 412 F.Supp. at 308 ("As a general rule, equity prefers the claims of innocent general creditors over the claims of shareholders or subordinated creditors deceived by the corporation.").[18]

### III.

For the foregoing reasons, this Court holds that the claims asserted by the Greenfield plaintiffs are direct, non-derivative claims, that may proceed on equal footing with those of the RTC. The Motion by the RTC to Stay is DENIED, and a judgment so declaring shall enter in Civil Action No. 91–11078–WGY.

---

**18.** Note that most of the cases on the subject of a stay involve shareholders not subordinated capital note holders. It is clear that the general rule is for shareholders to come last in the scheme of priorities. Because of this, the RTC and Greenfield each argue that the other party is the most like a shareholder. Old Sentry, however, had no shareholders. The RTC represents depositors and creditors who would take no additional profit if the company succeeded, and as such, are not readily analogous to shareholders. The Green- field plaintiffs are not depositors (although most of them were before they bought the notes). The Greenfield plaintiffs are, however, creditors of Old Sentry but creditors who hold securities, and who were to receive an enhanced return in exchange for a higher risk. In such circumstances, justice will best be served, not by a complex series of priorities, but by promptly addressing the merits of the underlying claims against the alleged wrongdoers.