982 F.2d 104
 61 USLW 2409, Fed. Sec. L. Rep. P 97,384
 F.W. HAYES, on behalf of himself and all others similarly situated
v.
Jay M. GROSS; Nathaniel D. Gross; Samuel Feinberg; David
E. Fisher; Joseph E. Levine; Jerome Pomerantz;
Glenn S. Suplee,
Frank W. Hayes, Appellant.
 No. 92-1022.
 United States Court of Appeals,
Third Circuit.
 Argued July 9, 1992.
Decided Dec. 29, 1992.
 
 Kenneth A. Jacobsen (argued), Christopher T. Reyna, Ira Neil Richards, Robin Resnick, Greenfield & Chimicles, Haverford, PA, for appellant Frank W. Hayes.
 Richard H. Glanton, Carolyn P. Short (argued), Thomas J. Marshall, Reed, Smith, Shaw & McClay, Philadelphia, PA, for amicus curiae The Resolution Trust Corp.
 Before SLOVITER, Chief Judge, and STAPLETON and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 I.
 
 1
 In this appeal, we consider whether plaintiff-appellant F.W. Hayes ("plaintiff") has stated a claim under the federal securities laws against officers and directors of Bell Savings Bank ("Bell"), a state-chartered savings association in the receivership of the Resolution Trust Company ("RTC"). Plaintiff alleges in his amended complaint that defendants knowingly or recklessly misrepresented the financial and operating condition of Bell, that this resulted in the artificial inflation of the market price for Bell stock, and that plaintiff and others similarly situated were injured when they purchased Bell stock at the inflated price.
 
 
 2
 At the urging of defendants and the RTC, which filed an amicus brief, the district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Relying on our decision in In re Sunrise Securities Litigation, 916 F.2d 874 (3d Cir.1990), the district court found that plaintiff's claim was predicated on injury to Bell caused by defendants' mismanagement and that the claim was therefore a derivative one. Since plaintiff had not pleaded all of the essential elements of a derivative claim and disclaimed any desire to amend his complaint to do so, the complaint was dismissed.
 
 
 3
 Our review of a dismissal under Rule 12(b)(6) is plenary. We accept as true all well-pleaded allegations and construe them in the light most favorable to plaintiff, and we may affirm only if the complaint alleges no set of facts which, if proved, would entitle plaintiff to relief. Marshall-Silver Const. Co., Inc. v. Mendel, 894 F.2d 593, 595 (3d Cir.1990). Because we find that the amended complaint alleges direct injury to plaintiff and states a claim under the securities laws, we will reverse the dismissal and remand for further proceedings.
 
 II.
 
 4
 We recently reviewed the relevant securities law in Shapiro v. UJB Financial Corp., 964 F.2d 272 (3d Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (1991), make it unlawful for anyone to make a material misrepresentation in connection with a purchase or sale of securities. To state a claim under the statute and the rule, a private plaintiff must plead a false representation of a material fact, the defendant's knowledge of its falsity and his intention that the plaintiff rely on it, the plaintiff's reasonable reliance on the representation, and the plaintiff's resulting loss. Shapiro, 964 F.2d at 280. Where the security involved is traded in an open and efficient market, the plaintiff need not show personal and specific reliance on the misrepresentation made by the defendant; he may instead rely on the "fraud-on-the-market theory" and allege only that he suffered injury in his capacity as a purchaser or seller in such a market.
 
 
 5
 In Shapiro, we also noted that an allegation of mismanagement on the part of a defendant will not alone support a claim under § 10(b) or Rule 10b-5; nor will an allegation that a defendant failed to disclose the existence of mismanagement. We held, however, that a complaint does allege an actionable misrepresentation if it alleges that a defendant was aware that mismanagement had occurred and made a material public statement about the state of corporate affairs inconsistent with the existence of the mismanagement. A statement of opinion or belief, if known to be false, may be the basis of such a claim. Shapiro, 964 F.2d at 281-83.
 
 
 6
 In this case, plaintiff alleges that defendants mismanaged Bell. If this were all that plaintiff alleged, the RTC would be correct in its position that only Bell has a claim against defendants and that plaintiff may assert that claim only by satisfying the prerequisites of a derivative action. But plaintiff alleges more than mismanagement. He alleges that defendants made affirmative representations inconsistent with the state of corporate affairs they knew to exist. Plaintiff alleges, for example, that defendants, knowing that Bell's loan loss reserves were grossly inadequate, caused its 1988 annual report to state that "[a]n allowance for loan losses is maintained at a level that management considers adequate to provide for potential losses based upon an evaluation of known and inherent risks in the loan portfolio." Amended Complaint p 35. Plaintiff also alleges that in Bell's report to stockholders for the quarter ended December 31, 1988, defendants, knowing the claim to be false, asserted that Bell's "asset quality remained strong and [that it had] a non-performing asset to total asset ratio of .63%." p 37. As a final example, plaintiff alleges that Bell's 1989 annual report asserted that "Management believes [Bell] is comfortably within the guidelines and requirements of FIRREA and foresees no problem in complying with its future regulations," when in fact defendants "knew or recklessly disregarded the fact that Bell was hopelessly incapable of substantially complying with FIRREA because of the severe deterioration in Bell's loan portfolio." p 43.
 
 
 7
 We find these representations indistinguishable from those found actionable in Shapiro. There, plaintiffs accused defendants of knowingly or recklessly misrepresenting UJB Financial Corporation's loan loss reserves as "adequate," its loan portfolio as "well secured," and its asset quality as "high." 964 F.2d at 283. Here, as in Shapiro, if plaintiff can prove that such assertions were made, that they were false, that the defendants knew them to be false or acted with reckless indifference to their falsity, and that plaintiff thereafter suffered a loss by purchasing stock, he will have proved a paradigm case of a violation of § 10(b) and Rule 10b-5.
 
 
 8
 In reaching our conclusion that the amended complaint states a cause of action under the securities laws, we have considered the RTC's contention that plaintiff has not alleged either direct reliance on the alleged misrepresentation or facts sufficient to support a "fraud-on-the-market" theory. The amended complaint alleges that plaintiff relied on the integrity of the market and the price for Bell stock in making his purchase. Plaintiff thus invokes the fraud-on-the-market theory and is not required to allege or prove individual reliance on particular misrepresentations. Basic Inc. v. Levinson, 485 U.S. 224, 247, 108 S.Ct. 978, 991, 99 L.Ed.2d 194 (1988). The theory's presumption of reliance is only available, however, if Bell stock was traded on an "open and developed," efficient market. Id. at 241, 108 S.Ct. at 989 (quoting Peil v. Speiser, 806 F.2d 1154, 1161 (3d Cir.1986)).
 
 
 9
 The RTC asserts that the complaint was properly dismissed because the market for Bell stock was not efficient. Yet the question on a motion to dismiss is not whether plaintiff has proved an efficient market, but whether he has pleaded one. Plaintiff alleges that "there was an open, efficient, impersonal, well developed market for the trading of shares of Bell wherein the market price reflected publicly disseminated information." p 82. Plaintiff further avers that the average weekly trading volume for Bell stock was approximately 38,000 shares; that Bell stock was listed on the NASDAQ/National Market System, which gave investors access to up to the minute information, including real time prices; and that Bell was actively followed during the class period by at least five market analysts whose reports were widely disseminated to the public. pp 80, 81. The complaint thus alleges an efficient market.[1]
 
 
 10
 In summary, plaintiff has stated a claim under § 10(b) and Rule 10b-5.[2] Plaintiff alleges that defendants knowingly or recklessly made material misrepresentations which inflated the market price for Bell stock, and that he relied on the market price as reflecting Bell's true value. As a result, plaintiff claims to have suffered injury as a stock purchaser.
 
 III.
 
 11
 We do not understand the defendants or the RTC to seriously dispute the principles of securities law we have reviewed in the foregoing section. Rather they contend that the controlling authority is In re Sunrise, 916 F.2d 874 (3d Cir.1990).
 
 
 12
 In Sunrise, plaintiffs were depositors in an insolvent savings and loan association, "Old Sunrise," who alleged that the directors, officers, attorneys, and auditors of Old Sunrise had violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68 (1988), and state law. Plaintiffs claimed that defendants misrepresented Old Sunrise as "well run and secure" and failed to disclose that it had serious financial problems caused by mismanagement. These misrepresentations, they alleged, induced them to purchase certificates of deposit from Old Sunrise in 1984. Old Sunrise was declared insolvent in 1985, and the Federal Savings and Loan Insurance Corporation, as receiver, transferred Old Sunrise's assets and liabilities to "New Sunrise." Neither the plaintiffs nor any other depositors in Old Sunrise lost any portion of their deposits. When plaintiffs' certificates matured in 1986, they withdrew the interest and rolled over the principal into certificates with New Sunrise. New Sunrise subsequently became insolvent and plaintiffs did not recover all of the uninsured interest on their certificates. Id. at 875-77.
 
 
 13
 Applying Florida law, we held that plaintiffs could not assert individual RICO claims against the officers and directors of Old Sunrise because their injury--loss of uninsured interest--resulted from mismanagement and insolvency, not misrepresentation. Id. at 887. Finding the injury "inextricably linked to the insolvency of New Sunrise" id., we held that the claim plaintiffs sought to assert belonged to the corporation and could be pursued by plaintiffs only in a derivative suit. That holding does not control the present case, however.
 
 
 14
 In Sunrise, plaintiff-depositors alleged mismanagement and failure to disclose mismanagement. In addition, they accused the defendants of making misrepresentations that allegedly induced them to deposit funds in Old Sunrise. Nevertheless, as we read the complaint, it did not state "a claim of direct injury from fraud, distinct from the injury sustained by Old Sunrise and all other depositors as a result of defendants' mismanagement." Id. at 882. The plaintiffs did not allege that the Old Sunrise certificates of deposit they were induced to purchase were worth less when received than they paid for them. Old Sunrise had sufficient assets to repay its depositors and they experienced no loss. The plaintiffs acknowledged that they suffered no loss at the point of purchase and, indeed, stipulated that their injury occurred at the time of the failure of New Sunrise.[3] This injury caused by the insolvency of New Sunrise was shared with all other depositors who failed to recoup funds. We predicted that in such circumstances Florida law would provide a depositor only with a derivative claim against the officers and directors.
 
 
 15
 Sunrise is based on a distinction we predicted Florida law would draw between derivative and direct claims. Where a corporation has suffered an injury from actionable wrongs committed by its officers and directors, we determined that the remedy under Florida law is a suit on behalf of the corporation. Such a suit may be brought by the corporation or, in some circumstances, by the stockholders or creditors on its behalf. Yet whoever institutes the suit, the recovery goes to the corporation. While the mismanagement may ultimately cause the corporation's stock to decline in value or result in an insolvency that renders creditors' claims uncollectible, the stockholders and creditors cannot recover in their individual capacities because their loss is the indirect result of the injury to the corporation.
 
 
 16
 This analysis is entirely consistent with the proposition that an individual stockholder may sue officers and directors based on an injury distinct from the injury to the corporation and the indirect injury to stockholders generally. This is the type of injury alleged in the case presently before us. Plaintiff's claim is based on specific misrepresentations that affected prospective purchasers similarly situated to plaintiff differently from existing stockholders. Plaintiff here seeks to recover the difference between the allegedly inflated price he paid for his stock and the price he would have paid had defendants made accurate statements regarding such subjects as the adequacy of Bell's loan reserves and the strength of Bell's assets.
 
 
 17
 Allowing plaintiff to pursue this claim will neither prejudice the corporation and its other stockholders nor permit a double recovery for the same injury. If Bell has claims against its officers and directors arising from their mismanagement, the RTC is free to pursue those claims for the ultimate benefit of the creditors and stockholders of Bell. Assuming solvency on the part of the defendants, as we must on this record, we see no conflict between plaintiff's interest and those of the creditors and other stockholders. Assuming insolvency on the part of the defendants, a conflict between plaintiff and Bell, as creditors of the defendants, may arise, but the RTC has advanced no persuasive reason why, in such circumstances, plaintiff and Bell should not be treated as any other creditors competing for a limited pool of resources.
 
 
 18
 As far as the potential for double recovery is concerned, plaintiff has alleged that the market price of Bell stock when he purchased it was far in excess of what it would have been had the market been evaluating the failing institution that defendants knew Bell to be. Plaintiff will have to prove this allegation. When he attempts to do so, it may be that he will attempt to recover compensation to which the corporation is justly entitled. If so, the district court will be required to evaluate the prospect of double recovery in the specific fact context presented by plaintiff's case on damages. It will suffice for present purposes to conclude, as we do, that double recovery is not inherent in plaintiff's theory of the case and, accordingly, that recovery without duplication is possible.[4]
 
 IV.
 
 19
 The RTC does not expressly argue that the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101-73, 103 Stat. 183, has impliedly amended § 10(b). Nor does it contend that RTC claims on behalf of a bank against its officers and directors for mismanagement should be given priority over direct fraud claims by bank stockholders against those officers and directors.[5] The RTC nevertheless asserts that this suit "threaten[s] to impair the RTC's statutory mandate [under FIRREA] to protect and maximize the assets of the failed institution" and that we "should fashion rules which effectuate [the] statutory policies" established by FIRREA. Amicus Brief at 4.
 
 
 20
 We can perceive no merit to this argument. The RTC does not identify any section of FIRREA that would be violated by permitting a bank stockholder to recover on a direct fraud claim given him by the Exchange Act. It merely asserts and reasserts that those whose interests the RTC represents will be better off if this case is dismissed. This proposition is not self evident. Whether or not plaintiff is permitted to proceed, the RTC will remain free to "protect and maximize the assets of the failed institution" by bringing suit, under 12 U.S.C. § 1821(k) or otherwise, against Bell's officers and directors. If both plaintiff and the RTC prove entitled to judgment, there will be no inequity in requiring defendants to satisfy both judgments. While, as we have noted, the interests of plaintiff and the RTC may conceivably come into conflict in the event defendants become insolvent before both judgments are paid, the RTC does not here argue that the rules of priority which would reconcile that conflict are inconsistent with FIRREA.
 
 
 21
 We believe the RTC's statutory policy argument is, in essence, a claim that Congress, in enacting FIRREA, impliedly amended the Exchange Act so as to subordinate the latter to the former. We find nothing in the text or legislative history of FIRREA to support this proposition and therefore reject it.[6]
 
 V.
 
 22
 We will reverse the dismissal of plaintiff's complaint and remand to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 We take note of the thorough analysis in Cammer v. Bloom, 711 F.Supp. 1264 (D.N.J.1989), where the district court, in ruling on a motion for summary judgment under Fed.R.Civ.P. 56, considered whether plaintiffs' affidavit showed "specific facts" indicating an efficient market. The court listed various factual allegations that could support an inference that the market for a security was efficient, including: (1) allegations of a large average trading volume; (2) allegations that a significant number of securities analysts followed and reported on the security; (3) allegations that the security had numerous market makers; (4) allegations that the company was entitled to file an SEC Form S-3 Registration Statement; and (5) allegations of facts showing a causal connection between unexpected corporate events or financial releases and an immediate response in the stock price. Id. at 1286-87. At the time of a motion to dismiss under Rule 12(b)(6), however, a plaintiff need not show "specific facts" as required under Rule 56(e). As the court recognized in Cammer, on a motion to dismiss the question is whether plaintiff has alleged that the stock traded in an efficient market, or whether any of the facts alleged give rise to such an inference. Id. at 1278
 
 
 [2]
 We find no merit in the RTC's suggestions that plaintiff has failed to allege "loss causation" and a connection between the alleged misrepresentation and a purchase of securities
 
 
 [3]
 In re Sunrise Securities Litigation, 108 B.R. 471, 474 n. 4 (E.D.Pa.1989)
 
 
 [4]
 Unadjudicated claims held by a corporation are among its assets and may materially affect the true value of the corporation and its stock. See, e.g., Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 154-56, 92 S.Ct. 1456, 1472-73, 31 L.Ed.2d 741 (1972). Any claims held by Bell against its officers and directors on the date plaintiff purchased his stock were corporate assets at that time and may play a role in determining the true value of Bell stock at that time
 
 
 [5]
 The Federal Deposit Insurance Corporation, which has a mandate similar to that of the RTC, has made such an argument in other cases with differing results. The Court of Appeals for the Sixth Circuit accepted the argument in Gaff v. Federal Deposit Ins. Corp., 919 F.2d 384 (6th Cir.1990), modified, 933 F.2d 400 (1991). It has been rejected by Courts of Appeals for the Eleventh and Fourth Circuits in Federal Deposit Ins. Corp. v. Jenkins, 888 F.2d 1537 (11th Cir.1989), and Howard v. Haddad, 916 F.2d 167 (4th Cir.1990). See generally Christopher A. Martin, Note, The Sixth Circuit Grants the FDIC Priority Over Direct Shareholder Suits Against Officers and Directors of Banks in FDIC Receivership, 70 Wash.U.L.Q. 255 (1992); Samantha Evans, Note, An FDIC Priority of Claims Over Depository Institution Shareholders, 41 Duke L.J. 329 (1991). This court appears to have aligned itself with the Courts of Appeals for the Eleventh and Fourth Circuits. In Sunrise, we commented favorably on the reading of FIRREA's legislative history in Jenkins, and observed that if the depositor-plaintiffs in Sunrise had been pursuing "individual, non-derivative fraud claims against the officers [and] directors ... they [could] proceed on equal footing with FDIC against these defendants." 916 F.2d at 889
 
 
 [6]
 There is some legislative history regarding FIRREA, not cited by the RTC, that deals with claims for securities fraud. For instance, a Senate amendment to FIRREA, granting the FDIC priority over shareholders in claims against directors and officers of failed financial institutions, was rejected by the joint conference committee on grounds that such a priority was unfair to victims of fraud, and that a priority would deter private suits and impair the current enforcement scheme by which private actions supplement the efforts of the SEC and the Department of Justice. See 135 Cong.Rec. H4985 (daily ed. Aug. 3, 1989) (statement of Rep. Glickman); id. at H4989 (statement of Rep. Staggers)