NH Right to Life v. Gardner          CV-96-212-JD  06/21/96
                   UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


New Hampshire Right to Life
Political Action Committee

         v.                              Civil No. 96-212-JD

William Gardner, et al.


                              O R D E R


     The plaintiff, New Hampshire Right to Life Political Action

Committee ("NHRLPAC"), brought this action under 42 U.S.C. § 1983

against the New Hampshire Secretary of State and Attorney General

in their official capacities, seeking declaratory and injunctive

relief.  Before the court is the plaintiff's amended motion for a

preliminary injunction (document no. 11).


                            Background

     New Hampshire Rev. Stat. Ann. ("RSA") § 664:5,V (Supp. 1995)

provides:

          No political committee shall make independent
     expenditures in excess of $1,000 for or against any
     candidate running for a particular office in a state
     primary election, and a like amount in a state general
     election, in support of or to oppose any candidate.

RSA § 664:3,I (Supp. 1995) requires political committees to

register with the Secretary of State and to declare that they

will not exceed the expenditure limitations of RSA § 664:5,V.

RSA § 664:3,II (1994) provides that political committees may not make independent campaign expenditures without complying with the declaration requirement of RSA § 664:3,I.

Relying on Buckley v. Valeo, 424 U.S. 1 (1976) (per curiam), NHRLPAC brought this action seeking declaratory and injunctive relief against enforcement of the statutory provisions outlined above on the ground that they violate the First Amendment to the United States Constitution. NHRLPAC alleged that it is a political committee within the meaning of the relevant statutes, and that it intends to spend more than $1,000 in independent expenditures advocating the election of a clearly identified candidate for state office. NHRLPAC also stated its intention not to comply with the declaration requirement of RSA § 664:3,I.[1]

Following the commencement of this lawsuit, the defendants requested information concerning the plaintiff's planned expenditures and the plaintiff's relationship to the candidate it intends to support. On June 6, 1996, the defendants' attorneys deposed NHRLPAC's chairperson, Barbara Hagan, who described her

[1]The defendants have filed a copy of a political committee registration form for the 1996 primary and general elections signed by Barbara Hagan, the plaintiff's chairperson, on November 17, 1995. The form indicates the plaintiff's intent to make independent expenditures with respect to candidate(s) to be named at a later date, and contains the following declaration: "We, the undersigned, declare that any independent expenditures made by this political committee will not exceed the expenditure limitations as set forth in RSA § 664:5,V."

committee's plans to purchase two advertisements in the New Hampshire Right to Life News and to distribute 30,000 flyers, all in support of the candidate and at a cost well in excess of $1,000. Hagan also described her organization's relationship with the candidate, stating, inter alia, that the candidate currently is a member of NHRLPAC, has attended rallies sponsored by NHRLPAC, and communicates with Hagan several times a week about the campaign. Hagan further stated that several members and trustees of NHRLPAC are currently working on or plan to help the candidate's campaign in some manner.

The defendants, acting through attorneys from the office of the Attorney General, have filed an objection to the instant motion. Based on Hagan's deposition testimony, they have stated that they do not consider the expenditures NHRLPAC intends to make on behalf of the candidate to be "independent," and have represented that the state will take no enforcement action under RSA § 664:5,V with respect to such expenditures. The defendants also have represented that the plaintiff is not subject to prosecution under RSA § 664:5, II (1994), which prohibits political committees from making expenditures or contributions for the purpose of advocating a candidate without obtaining and filing with the Secretary of State the candidate's consent.

3

## Discussion

The defendants argue that the plaintiff's request for injunctive relief should be denied because the plaintiff is not threatened with prosecution and thus lacks standing to raise its First Amendment claims. The plaintiff has challenged the defendants' construction of the statutes at issue and the defendants' authority to determine prospectively whether an expenditure is independent, and claims that the chilling effect caused by the statutory scheme, even without the threat of prosecution, is sufficient to confer standing.

The case and controversy requirement of Article III of the United States Constitution places upon the plaintiff the burden of proving (1) some actual or threatened injury as a result of the putatively illegal conduct; (2) that the injury may fairly be traced to the challenged action; and (3) that a favorable decision is likely to redress the injury. Vote Choice, Inc. v. DiStefano, 4 F.3d 26, 36 (1st Cir. 1993); United States v. AVX Corp., 982 F.2d 108, 114 (1st Cir. 1992). To satisfy the first prong of this test, a party contesting the validity of a statute prior to its enforcement must allege more than a mere "subjective chill," e.g., Meese v. Keene, 481 U.S. 465, 473 (1987), and must demonstrate a credible threat of prosecution, Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 298 (1979); see also

4

Younger v. Harris, 401 U.S. 37, 42 (1971) ("[P]ersons having no fears of state prosecution except those that are imaginative or speculative . . . are not to be accepted as appropriate plaintiffs."). Enjoining the enforcement of a state statute is a matter of serious import and the prerequisites for doing so must be strictly complied with. Although non-constitutional rules of standing such as the prohibition against asserting another person's legal rights may be relaxed where a plaintiff asserts a First Amendment claim, see, e.g., Virginia v. American Booksellers Ass'n, 484 U.S. 383, 392 (1988), the existence of actual or threatened injury is a prerequisite to federal jurisdiction, regardless of the claim asserted. See, e.g., Village of Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 634 (1980) ("Given a case or controversy, a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court." (emphasis added)).

Here, the Attorney General, a named party in this action, has represented both to this court and to the plaintiff that the plaintiff will not be prosecuted for making expenditures on behalf of the candidate at issue under RSA § 664:5, V or RSA § 664:5, II. The Attorney General also has submitted an affidavit

from an employee in the Office of the Secretary of State indicating that the plaintiff currently is in full compliance with the declaration requirement of RSA § 644:3, I. See Affidavit of Ellen C. Dube at ¶ 4. Although the plaintiff disputes the authority of the Attorney General to make such representations, the court considers the representations to be binding and the plaintiff to be protected by them. The Attorney General is entrusted by statute with enforcement of the election laws in general, see RSA § 7:6-c (1988), and of the political expenditure and contribution laws in particular, see RSA § 664:18 (1994), and has unequivocally represented to the court that the plaintiff will not be subject to prosecution for the acts it intends to undertake. As enforcer of the election laws, the Attorney General has bound the state to his representations. As such, there is no credible threat of prosecution under the statutory provisions at issue, and the court has no authority under Article III to adjudicate the constitutionality of the statutes as written or applied.[2]

---

[2]The plaintiff relies on American Booksellers for the proposition that the danger caused by self-censorship is sufficient to confer standing on a plaintiff, even where there is no threat of actual prosecution. The argument is unavailing. Although the American Booksellers court did recognize that the harms of self-censorship "can be realized without an actual prosecution," the court was not confronted with a situation where, as here, there is not only no prosecution, but not even the threat of one. See 484 U.S. at 393.

The court's conclusion presents a constitutional barrier not only to the adjudication of the instant motion but also to the court's consideration of the merits of the case. As the First Circuit has noted, "[s]tanding poses the potential for a domino effect. If a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." AVX Corp., 962 F.2d at 113. The court has no jurisdiction over the subject matter of the case. The plaintiff's motion for a preliminary injunction is denied and the case is dismissed.

## Conclusion

The clerk is ordered to close the case.

SO ORDERED.

                                   _____
                                   Joseph A. DiClerico, Jr.
                                   Chief Judge

June 21, 1996

cc: Stephen F. Queeney, Esquire
     James Bopp Jr., Esquire
     Lucy C. Hodder, Esquire