**Gerald LEVINE, Plaintiff,**

v.

**METAL RECOVERY TECHNOLOGIES, INC., formerly known as Malvy Technology, Inc., Jack Alexander, Michael Lucas, Michael Rabhi, Gary Salter, SGA Goldstar Research, Inc., Barron Chase Securities, Inc., and Lawrence Turrell, Defendants.**

**Civ.A. No. 96–525–JJF.**

United States District Court, D. Delaware.

June 26, 1998.

104

Daniel A. Dreisbach, Richards, Layton & Finger, Wilmington, DE, Jack Alexander, Fort Smith, AR, Gary Salter, Boca Raton, FL, Bruce E. Jameson, Daniel P. Conneen, Prickett, Jones, Elliott, Kristol & Schnee, David J. Margules, Joanne P. Pinckney, Wolf, Block, Schorr & Solis–Cohen, Wilmington, DE, for defendants.

Norman Monhait, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE (David B. Zlotnick, Law Offices of David B. Zlotnick, Tucson, AZ; Donald B. Lewis, Law Offices of Donald B. Lewis, Bala Cynwyd, PA, of Counsel), for Plaintiff.

Joanne P. Pinckney, David J. Margules, Wolf, Block, Schorr and Solis–Cohen, Wilmington, DE (David S. Mandel, David S. Mandel, P.A., Miami, FL, of Counsel), for Defendant.

## MEMORANDUM OPINION

FARNAN, Chief Judge.

Presently before the Court is Defendant Lawrence Turel's Motion To Dismiss The Amended Class Action Complaint (D.I. 71). Turel seeks dismissal of Plaintiff's claims against him pursuant to Federal Rules of Civil Procedure ("FRCP") 9(b) and 12(b)(6) for failure to plead fraud with sufficient particularity and failure to allege facts sufficient to support a cause of action against him under Section 10(b) of the Securities Exchange Act of 1934. (D.I. 71). The Amended Complaint alleges that Defendants engaged in a scheme and conspiracy to defraud that involved three basic components:

(1) certain Defendants issued statements regarding Malvy Technology, Inc.'s ("Malvy")[1] stage of development, principal product, and prospects which misrepresented and omitted material facts and had no factual basis;

(2) Defendant Salter in conspiracy with other Defendants bribed securities brokers and traders, including Turel, to induce them to aggressively sell Malvy stock to unsuspecting members of the investing public, and thereby, inflate the market price for Malvy stock; and

(3) Defendants laundered large amounts of unregistered stock into the United States market through various foreign companies, in large part through accounts handled by Turel. (D.I. 65).

### A. FRCP 9(b) Claim

Turel's first argument is that the Amended Complaint fails to allege fraud in compliance with FRCP 9(b), which requires that in pleading claims of fraud, "the circumstances constituting fraud ... shall be stated with particularity." Specifically, Turel claims that the Amended Complaint fails to allege any particular communications, meetings, conversations, actions, or events occurring among Defendants and alleged co-conspirators to support a fraud claim under Section 10(b).

Rule 9(b) requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage. *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 284 (3d Cir.1992). However, in a case involving corporate fraud, the Court of Appeals for the Third Circuit has emphasized that ... " 'plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs,' " particularly when relevant factual information is within the defendant's knowledge or control. *Shapiro*, 964 F.2d at 285 (quotation omitted). With this standard in mind, the Court must reject Turel's argument. The Court concludes that Plaintiff's Amended Complaint alleges fraud with sufficient particularity to satisfy Rule 9(b). The Amended Complaint identifies with particularity the participants in the alleged fraud, the nature of the alleged fraud, where and when the fraud supposedly occurred, and the means that Defendants allegedly used to perpetrate it.

Furthermore, the Amended Complaint alleges Turel's scienter with sufficient particularity to satisfy Rule 9(b). Rule 9(b) expressly provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." The Court finds that the Amended Complaint fulfills this requirement by alleging that Turel accepted bribes to promote and sell Malvy stock. The payment of these bribes has been testified to by Salter's assistant and is further corroborated by the guilty pleas of three former Barron Chase brokers. (D.I. 65, para. 59–60). The assertion that Turel accepted bribes fulfills the scienter requirement. Further, with regard to the claim that Turel participated in a laundering scheme of unregistered stock, the Amended Complaint alleges that the shares that Turel sold for

---

1. Defendant Metal Recovery Technologies, Inc.

was formerly known as Malvy Technology, Inc.

Salter were transferred to Salter's accounts from various Isle of Man companies and Turel was the broker for at least two of the Isle of Man companies, Collett Limited and Clearwater Limited. (D.I. 65, para. 42–43). The Court concludes that these assertions are sufficient to fulfill the pleading requirements of FRCP 9(b).

### B. *FRCP 12(b)(6) Claim*

■ Turel contends that the Amended Complaint fails to plead the requisite elements to state a cause of action under Section 10(b) of the Securities Exchange Act of 1934. Under Section 10(b), a plaintiff must demonstrate that (1) the sale or purchase of a security was accompanied by a misrepresentation or omission of a material fact; (2) the defendant acted with scienter; (3) the plaintiff justifiably relied on such misrepresentation in connection with the purchase or sale of a security; and (4) the plaintiff suffered damage as a result of the misrepresentation or omission. *See Sowell v. Butcher & Singer, Inc.,* 926 F.2d 289, 296 (3d Cir.1991).

Turel argues that Plaintiff's Amended Complaint does not plead any of the elements for a Section 10(b) action. Specifically, Turel contends that Plaintiff fails to allege that Turel personally made any material misrepresentations or omissions, and that all of the allegations made against him "rely solely on his tenuous connection with some of the other [D]efendants." (D.I. 71 at 9). Further, Turel argues that Plaintiff has not met his burden of establishing that Turel had any knowledge of the falsity of the issued statements other than Plaintiff's conclusory propositions. Finally, Turel contends that the Amended Complaint fails to allege that Plaintiff relied on any of the purported misrepresentations and that Plaintiff suffered damage as a result of any alleged misrepresentation.

■ Securities fraud liability under Section 10(b) and Rule 10b–5 is not limited to the making of materially false and misleading statements and omissions. *See Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 476–77, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). By its terms, the statute and rule prohibit all fraudulent schemes in connection with the purchase or sale of securities, whether they involve the typical type of fraud or a unique form of deception. *See, Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 11 n. 7, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). In *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 152–53, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), the United States Supreme Court comments that "the second subparagraph of the rule [subsection b] specifies the making of an untrue statement of a material fact and the omission to state a material fact," however, "[t]he first and third subparagraphs [subsections (a) and (c)] are not so restricted." The Supreme Court held in *Affiliated Ute* that the defendants violated Section 10(b) and Rule 10b–5 when they participated in a "course of business" or a "device, scheme or artifice" that operated as a fraud, despite the fact that the defendants had not personally made any false or misleading statements. 406 U.S. at 153, 92 S.Ct. 1456. Accordingly, the Court concludes that the Amended Complaint alleges with sufficient particularity that Turel directly engaged in manipulative acts that are actionable under Section 10(b) and Rule 10b–5 and failed to disclose them to the public.

■ The Court also rejects Turel's argument that the Amended Complaint fails to allege that Turel committed a primary violation of Section 10(b). Courts have concluded that a primary liability claim is presented if "a party significantly participated in the alleged manipulative or deceptive scheme." *Primavera Familienstiftung v. Askin,* 95 Civ. 8905 (RWS), 1996 WL 494904, at *7 (S.D.N.Y. August 30, 1996). The Amended Complaint alleges that Turel directly engaged in a scheme to defraud investors in Malvy by accepting bribes to push Malvy stock and he, personally, profited by the scheme. Specifically, the Amended Complaint identifies Turel as acting as the broker and trader for Salter's accounts and for at least two of the Isle of Man Companies, Collett Limited and Clearwater Limited. (D.I. 65, para. 43). Moreover, Plaintiff claims that the brokers at Barron Chase who sold Malvy stock were required to route their trades through Turel who thereby distributed Salter's stock holdings into the market. (D.I. 65, para. 43). Further, three brokers of

Barron Chase have pled guilty to criminal charges of securities fraud in connection with their acceptance of payoffs to sell Malvy stock. (D.I. 65, para. 41). The Court concludes that these allegations are sufficient to demonstrate that Turel committed a primary violation of Section 10(b) at this juncture.

Furthermore, even if the Court finds that Turel was a secondary actor, the Amended Complaint still alleges with requisite particularity that Turel directly participated in a scheme that operated as fraud on the market which amounts to a primary violation of Section 10(a). In *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the Supreme Court held that there was no cause of action for aiding and abetting under Section 10(b), however, the Court acknowledged that "secondary actors" in the securities market may be held liable if they employ a manipulative device. As the Court explained:

> The absence of § 10(b) aiding and abetting liability does not mean that secondary actors in the securities markets are always free from liability under the securities Acts. Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b–5, assuming *all* of the requirements for primary liability under Rule 10b–5 are met.

*Id.* Therefore, regardless of Turel's level of involvement, the Court concludes that the Amended Complaint alleges a primary violation of Section 10(b).

■ Next, the Court concludes that Plaintiff has adequately alleged Turel's scienter, despite Turel's claims to the contrary. Scienter can be pleaded by alleging facts that demonstrate both motive and opportunity to commit fraud. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130–31 (2d Cir.1994). Routine executive compensation arrangements and ordinary commissions do not supply a motive for fraud, however, motive can be shown by the presence of "concrete benefits" that could be realized through fraud, such as insider stock sales. *Id.* Opportunity

would entail the means and likely prospect of achieving concrete benefits by the means alleged. *Id.* at 1130.

■ Turel maintains that allegations that he profited from substantial commissions from the sale of Malvy stock and that he monitored some of Salter's many accounts do not amount to scienter. However, Plaintiff did not only assert that Turel received large commissions in the ordinary course, rather, Plaintiff alleged in his Amended Complaint that Turel accepted undisclosed bribes equal to 15–20% of the gross sales of Malvy stocks for his participation in the pushing of Malvy stock upon the investing public. (D.I. 65, para. 41–43). The Court concludes that this is sufficient to demonstrate both motive and opportunity and thus, the Amended Complaint adequately pleads scienter for a Section 10(b) violation.

Finally, the Court concludes that the Amended Complaint adequately alleges Plaintiff's reliance on the alleged fraud and the damages that resulted therefrom. Turel maintains that Plaintiff failed to allege reliance on any misrepresentations made by Turel and that there is no factual foundation for Plaintiff's allegations that he received payoffs. Further, Turel argues that the Amended Complaint fails to plead facts establishing that Plaintiff suffered damage as a result of any alleged misrepresentation.

■ In the Third Circuit, it is firmly established that:

> Where the security involved is traded in an open and efficient market, the plaintiff need not show personal and specific reliance on the misrepresentation made by the defendant; he may instead rely on the "fraud on the market theory" and allege only that he suffered injury in his capacity as a purchaser or seller in such a market.

*Hayes v. Gross*, 982 F.2d 104, 106 (3d Cir. 1992); *In re ValueVision International Inc. Securities Litigation*, 896 F.Supp. 434, 447–48 (E.D.Pa.1995). Here, the security in question, Malvy stock, was traded at all relevant times on the NASDAQ Small Cap Market which is an automated market with stock's trading volume averaging many thousands of shares per day. (D.I. 65, para. 76).

Thus, the Malvy stock was being traded on an open and efficient market, and Plaintiff need only allege that he suffered injury as a purchaser under the "fraud on the market" theory.[2]

 Plaintiff alleges that Turel engaged in an undisclosed fraudulent scheme to manipulate the market for Malvy's stock and defraud investors and in connection with this scheme he accepted substantial bribes from Defendant Salter. Plaintiff does not allege specific misrepresentations by Turel, but relies on the integrity of the market that was allegedly skewed by Turel's manipulations. In support of his allegations, Plaintiff provides the following alleged factual support for Turel's purported bribery: testimony of Salter's assistant that Salter paid bribes of 15–20% to promote trading in Malvy; that three Barron Chase brokers pled guilty to taking such payoffs from Salter; that Turel handled Salter's accounts at Barron Chase and sold 890,000 shares of Malvy stock in late 1993 delivered to those accounts from the Isle of Man companies; and that all of the Barron Chase brokers were required to route their Malvy trades through Turel. (D.I. 65, para. 41–43).

With respect to the claims asserted by Plaintiff against Turel, traditional reliance is not required. Plaintiff's assertion that Turel's alleged fraudulent acts were a substantial factor in influencing Plaintiff's investment decision is sufficient. *See Bennett v. United States Trust Company,* 770 F.2d 308, 313 (2d Cir.1985). The Court concludes that the Amended Complaint sufficiently alleges a factual foundation for the assertion that Plaintiff relied on the integrity of the market that was artificially inflated by Turel's fraudulent activities. Plaintiff purchased some 16,000 shares of Malvy stock in a market that was allegedly inflated and this is sufficient to claim damages in an open market fraud case. *See In re ValueVision,* 896 F.Supp. at 447–48.

For the reasons discussed, the Court will deny Defendant Lawrence Turel's Motion To Dismiss The Amended Class Action Com-

plaint (D.I. 71). An appropriate Order will be entered.

---

2. The "fraud on the market" theory establishes a rebuttable presumption that material misrepresentations and omissions inflated the value of the security and that plaintiff purchased the security in reliance on the market's mistaken valuation. *In re ValueVision,* 896 F.Supp. at 448.