Jessie F. McFEELEY, Margaret F. Ostroski, Doris Florig, Jean Sweeney, and Dianne F. Nelson, Plaintiffs,

v.

James F. FLORIG, Defendant.

Civil Action No. 96–6401.

United States District Court, E.D. Pennsylvania.

June 10, 1997.

Christopher T. Moyer, Norristown, PA, Raymond M. Victor, Raymond M. Victor, P.C., Norristown, PA, for Plaintiffs.

Richard Linderman, Krista L. Pool, O'Donnell, Weiss & Mattei, P.C., Pottstown, PA, for Defendant.

## MEMORANDUM

GAWTHROP, District Judge.

Before the court is Defendant's Motion for Summary Judgement in this securities action. Plaintiffs allege that Defendant misrepresented the value of a family-owned corporation and thus was able to obtain their shares at a price below their true value. By these acts, Plaintiffs maintain, Defendant violated federal and Pennsylvania securities laws, engaged in fraud and fraudulent misrepresentation, and breached his fiduciary duty to disclose. Defendant counters that they cannot prove the elements of their securities and fraud claims, and that he had no fiduciary duty to Plaintiffs. Upon the following reasoning, I shall grant Defendant's motion in part and deny it in part.

### I. *Background*

In the fall of 1994, Pottstown Trap Rock Quarries, Inc. ("the quarry corporation") had 210 outstanding shares of common stock. Defendant James Florig, the quarry corporation's President and Chief Executive Officer, owned 160 shares, while his father, Adolph Florig, owned the remainder. In October, 1994, Adolph Florig gave 10 shares to each of his five daughters, the plaintiffs. However, he placed restrictions on these shares, giving his son James an option to buy the stock for $ 625,000. The plaintiffs signed escrow agreements and assignment forms to effectuate these restrictions. James Florig and his sisters did not participate in developing the gifts' structure, and they had no choice in the gifts' terms.

The plaintiffs allege that their father undervalued the shares he gave them because of their brother's misrepresentations and omissions. They contend that James Florig gave his father an appraisal, valuing the 50 shares at $ 432,000, which was faulty, because James had not divulged all relevant information to the appraiser. In 1994, when Adolph Florig was deciding the terms of his gifts, James Florig did not disclose appraisals of the quarry corporation tendered during his 1988 divorce proceedings, valuing the corporation's real estate at $ 3,528,250, and estimating the corporation's total worth at $ 9,700,00 to $ 11,300,000. James Florig also did not reveal his attempt to relocate a public road, which could extend the quarry's life and thus increase the quarry corporation's value.

In March, 1996, James Florig exercised his options and paid each of his sisters $ 125,00 for their shares. He then sold the quarry corporation for approximately $ 5 million. His sisters filed this suit.

### II. *Standard of Review*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Unless evidence in the record would permit a jury to return a verdict for the non-moving party, there are no issues for trial, and summary judgment becomes appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, a court does not resolve factual disputes or make credibility determinations, and must view facts and inferences in the light most

favorable to the party opposing the motion. *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir.1995). The party opposing the summary judgment motion must come forward with sufficient facts to show that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. *Discussion*

### A. *Securities Claims*

■ Defendant maintains that Plaintiffs cannot prove the elements of their securities fraud claims. Both federal and Pennsylvania securities laws prohibit the misrepresentation or omission of material facts in connection with the purchase or sale of securities. *See* Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j (b);[1] Securities Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5;[2] Pennsylvania Securities Act of 1972, 70 Pa. Stat. Ann. §§ 1–401, 1–501.[3] Because the anti-fraud provisions of the Pennsylvania Securities Act and the 1934 Securities Exchange Act are functionally identical, they may be analyzed together. *See Raykhman v. Digital Elevator Co.*, No. 93–1347, 1993 WL 370988 at *3 (E.D.Pa. Aug.30, 1993). Under both laws, the plaintiff must prove that (1) in connection with a security's purchase or sale by the plaintiff, (2) the defendant, with scienter, (3) made material misstatements or omissions, (4) upon which plaintiff relied, and that (5) the plaintiff suffered an economic loss because of the defendant's actions. *See Scattergood v. Perelman*, 945 F.2d 618, 622 (3d Cir.1991).

### 1. In Connection with Securities' Purchase or Sale

■ Defendant first argues that the plaintiffs were neither purchasers nor sellers of securities. Only actual purchasers or sellers may bring a securities fraud claim. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975). Holders of securities received as gifts are neither sellers nor purchasers. *See Rose v. Arkansas Valley Env. & Util. Auth.*, 562 F.Supp. 1180, 1188 (W.D.Mo.1983). However, persons who are contractually obligated to sell securities have been recognized as "sellers." *See Blue Chip Stamps*, 421 U.S. at 751, 95 S.Ct. at 1932–33. Here, the plaintiffs received their shares as gifts, but simultaneously signed an Escrow Agreement under which they were obligated to tender their shares to James Florig if he paid each of them $ 125,000. When James Florig exercised his options, his sisters were "sellers" under federal and state securities laws.

■ The "in connection with" requirement also must be read "flexibly, not technically and restrictively." *Superintendent of Insurance v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). The plaintiffs must show that they have "suffered an injury as a result of deceptive practices touching [the purchase or] sale of securities...." *Id.* at 12–13, 92 S.Ct. at 169. The Third Circuit "has construed the

---

1. Section 10(b) provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—...
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

2. Rule 10b–5, promulgated under § 10(b) of the Securities Exchange Act of 1934, states:

 It shall be unlawful for any person, directly or indirectly.
 (a) To employ any device, scheme, or artifice to defraud,
 (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale or any security.

3. Section 1–401 substantially echoes Rule 10b–5's language. Section 1–501 provides civil liability for § 1–401 violations.

'touching' requirement as mandating that there be some 'causal connection between the alleged fraud and the purchase or sale' of a security." *Angelastro v. Prudential–Bache Securities, Inc.*, 764 F.2d 939, 943 (3d Cir.), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985) (quoting *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 194 (3d Cir.1976)). The requisite causal nexus exists when the alleged misrepresentation relates to the particular security's merits or value. *Id.* at 942–43. Despite the temporal discontinuity between the alleged misrepresentations in 1994, when Adolph Florig gave the shares to his daughters, and the actual sale in 1996, when James Florig exercised his option, I find that Plaintiffs can satisfy the "in connection with" requirement. Construing this requirement broadly, I find that the alleged misrepresentation of the quarry corporation's value relates to the price placed upon the stock option and thus relates to the sale of the sisters' shares.

### 2. Scienter

To prevail upon a securities fraud claim, a plaintiff must show scienter, meaning an intent to deceive, manipulate or defraud. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n. 12, 96 S.Ct. 1375, 1380–81 & n. 12, 47 L.Ed.2d 668 (1976). In the Third Circuit, plaintiffs also may establish scienter by showing recklessness. *See Eisenberg v. Gagnon*, 766 F.2d 770, 776 (3d Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985); *McLean v. Alexander*, 599 F.2d 1190, 1197 (3d Cir.1979). A genuine issue of material fact exists in this case about whether the defendant possessed the requisite intent.

### 3. Material Misstatement or Omission

The next element, materiality, "depends on the significance the reasonable investor would place on the withheld or misrepresented information" and requires a "fact-specific inquiry." *Basic Inc. v. Levinson*, 485 U.S. 224, 240, 108 S.Ct. 978, 988, 99

L.Ed.2d 194 (1988). Information is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). *See also Basic Inc.*, 485 U.S. at 232, 108 S.Ct. at 983 (adopting *TSC*'s materiality standard for actions under § 10(b) of the Exchange Act). Only when the omissions or misstatements are "'so obviously important to an investor, that reasonable minds cannot differ on the question of materiality' is the ultimate issue of materiality appropriately resolved 'as a matter of law' by summary judgment." *TSC Indus.*, 426 U.S. at 450, 96 S.Ct. at 2133 (quoting *Johns Hopkins Univ. v. Hutton*, 422 F.2d 1124, 1129 (4th Cir.1970)). In this case, Defendant allegedly under-represented the value of the quarry corporation's shares when he signed the stock certificates, failed to inform his family of appraisals made during his divorce proceedings, and did not disclose his attempt to increase the quarry's value by relocating a road. Because reasonable minds could disagree about the materiality of this information, this element cannot be resolved as a matter of law.

### 4. Reliance

The key element here is reliance. According to the Supreme Court, "[r]eliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." *Basic Inc.*, 485 U.S. at 243, 108 S.Ct. at 989.[4] If the defendant demonstrates that the plaintiffs' decision would have been the same even if the withheld information had been disclosed, then there would be no reliance. *See Rochez Bros., Inc. v. Rhoades*, 491 F.2d 402, 410 (3d Cir.1974). The plaintiffs do not contend that, absent their brother's misrepresentations, they would not have sold the stock to him; they had no choice other than to sell the stock when he exercised his option. *See, e.g., St. Louis Union Trust Co. v. Merrill Lynch*,

---

4. Alternatively, Plaintiffs could sidestep the reliance requirement by showing the breach of a duty to disclose material information. *See Basic Inc.*, 485 U.S. at 243, 108 S.Ct. at 989–90, 99

L.Ed.2d 194 (1988). As discussed below, however, Defendant owed no fiduciary duty to the plaintiffs.

*Pierce, Fenner & Smith, Inc.*, 562 F.2d 1040, 1049–50 (8th Cir.1977), *cert. denied,* 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978) (finding no reliance where plaintiff was contractually obligated to sell stock). Rather, Plaintiffs maintain that they would not have signed the escrow agreement if they had known the information which their brother allegedly withheld. They claim that they would have contacted their father to discuss the matter further.

I recognize that there is a problem of causality here. Failure to sign the escrow agreement would not necessarily have prevented James Florig from receiving and exercising the purchase option. The parties can only speculate about what the now-deceased Adolph Florig would have done if his daughters had protested the terms of his gift. However, although it is somewhat speculative, *prima facie* a parent cares for its child's well-being. There are many exceptions to this rule, and times when children are disinherited, but the record in this case reveals no hint that the decedent wished to shortchange his daughters. Viewing the facts—and inferences—in the light most favorable to plaintiffs, I cannot say at this stage that there was no reliance.

### 5. Economic Loss

 Plaintiffs jointly held almost 20 percent of the quarry corporation's outstanding shares. They sold these shares to their brother for $ 625,000. He then sold the corporation for approximately $ 5,000,000. Their alleged economic loss is the difference between the value of their shares under the option contract and the value of the corporation's shares at the time of its sale. The parties thus have presented evidence to support the allegation that the plaintiffs suffered an economic loss because of the defendant's actions.

Because there is evidence in the record to support plaintiffs' securities claims, and because there are genuine issues of material fact, I shall deny summary judgment on these claims.

### B. *Common Law Fraud Claims*

 The parties agree that claims for fraudulent misrepresentation and equitable fraud may be treated as the same cause of action. These claims require: (1) a representation, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or recklessness as to its truth or falsity, (4) with the intent of misleading another into relying upon it, (5) upon which the plaintiff justifiably relied, and (6) the resulting injury was proximately caused by the reliance. *See Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994). Because these elements echo those for their securities fraud claims, a similar analysis applies. Under that reasoning, I shall deny summary judgment on these claims as well.

### C. *Fiduciary Duty and Confidential Relationship*

 Finally, the defendant argues that Plaintiffs cannot prevail upon their claims that he breached his confidential relationship with them and his fiduciary duty to them. A confidential relationship requires one person to occupy a superior position over another, with the opportunity to use that superiority to the other's disadvantage. *Union Trust Co. v. Cwynar,* 388 Pa. 644, 131 A.2d 133, 137 (1957). Similarly, for a fiduciary relationship, the plaintiff must show that it reposed its trust and confidence in the defendant, that defendant accepted that trust and confidence, and that the defendant occupied a position of domination and influence. *See City Harrisburg v. Bradford Trust Co.,* 621 F.Supp. 463, 473 (M.D.Pa.1985); *Lehner v. Crane Co.,* 448 F.Supp. 1127, 1131 (E.D.Pa. 1978). Pennsylvania courts do not presume a confidential or fiduciary relationship exists between family members. *In re Scott's Estate,* 455 Pa. 429, 316 A.2d 883, 885–86 (1974). Plaintiffs did not respond to Defendant's Motion for Summary Judgment on these claims. Generally, the evidence they submitted does not show that a relationship of trust and confidence existed among these siblings. Nor have Plaintiffs shown that their brother James dominated and influenced them. Because the only relationship clearly existing among these parties is a familial one, I shall grant summary judgment on the claims for

breach of confidential relationship and breach of fiduciary duty.

An order follows.

## ORDER

AND NOW, this 10th day of June, 1997:

1. Defendant's Motion for Summary Judgment is GRANTED on Plaintiffs' claims of Common Law Breach of Fiduciary Duty to Disclose and Common Law Confidential Relationship.

2. Defendant's Motion for Summary Judgment on all other claims is DENIED.