**Rosina Perin POPOVICE**

v.

**Gus MILIDES, Esquire, Norman Seidel, Esquire and Laub, Seidel, Cohen & Hof, L.L.C.**

**Civil Action No. 97–6363.**

United States District Court, E.D. Pennsylvania.

July 8, 1998.

Stephen D. Brown, Michael L. Kichline, Dechert Price & Rhoads, Philadelphia, PA, for Rosina Perin Popovice.

James R. Kahn, James F. Wiley, Margolis Edelstein, Philadelphia, PA, for Gus Milides.

Kean K. McDonald, Pamela M. Tobin, Fox, Rothschild, O'Brien & Frankel, L.L.P., Philadelphia, PA, for Norman Seidel, Esq., Laub, et al.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Defendants have filed a joint motion to dismiss plaintiff's complaint pursuant to Fed. R.Civ.P. 12(b)(1)[1] and (6) or in the alternative to stay proceedings pending the outcome of an underlying state court matter.[2] For

---

[1] Defendants repeatedly assert that they are also moving for dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(2). Inasmuch as our review of the Rules reflects that subject matter jurisdiction is properly challenged under Rule 12(b)(1), it is to that Rule that we refer throughout this Memorandum.

[2] This joint motion was filed on December 12, 1997. In the interim between this filing date and

the reasons set forth below, the motion is denied.

### History of the Case

On January 19, 1996, plaintiff retained defendant Gus Milides to represent her in divorce, custody and equitable distribution proceedings to be filed in the Court of Common Pleas of Northampton County against her husband, Michael J. Popovice. (Pl's Complaint, ¶ 8).[3] Plaintiff's complaint avers that at that meeting, she told Mr. Milides that she owned a one-fifth interest in several companies and that a sale of those companies at a very substantial premium to the owners was imminent. (Pl's Complaint, ¶ s 10–11). Plaintiff further avers that Milides, who had never represented her before, did not discuss with her the basis or rate of the legal fees to be charged despite her repeated inquiries and offers to pay him a retainer. Instead, defendant told plaintiff that they would address attorneys' fees "later." (Complaint, ¶ s 24–25, 34).

On May 30, 1996, the companies were sold to USA Waste for "tens of millions of dollars, payable in the common stock of USA Waste." (Complaint, ¶ s 17–18). Meanwhile, following the filing of the complaint in the Northampton County Court, the relationship between Mr. and Ms. Popovice deteriorated even further to the point that plaintiff felt so harassed that she hired security personnel for her home, filed a petition for protection from abuse and considered filing criminal charges against her estranged husband. (Complaint, ¶ s 38–42). Plaintiff alleges that despite defendant's knowledge of her vulnerable mental state and her susceptibility to becoming highly dependent upon others, on August 27, 1996, he called her late in the evening, advised her that it was "going to cost $1,000,000 to clean up this mess," and instructed her to come to his office the following morning to sign a contract. (Complaint, ¶ s 42–44). The

following day, defendant presented plaintiff with a fee agreement pursuant to which she was obligated to deliver $1,000,000 of her securities to defendants, $500,000 upon execution of the agreement and $500,000 on January 31, 1997. (Complaint, ¶ s 46, 49). Plaintiff contends that she signed the agreement because she felt bound to defendants, who had been representing her for more than 8 months and the child custody phase of the proceedings were about to begin and were expected to continue through the fall of 1996. (Complaint, ¶ 47). She transferred 17,777 shares of her USA Waste stock, worth more than $550,000 on that date, to the account of the Laub, Seidel firm at the Allentown branch of Merrill Lynch. (Complaint, ¶ 53).

By January, 1997, however, plaintiff had become dissatisfied with defendants' representation and refused defendant Milides' demands to turn over another 17,776 shares of stock. Plaintiff terminated the attorney-client relationship with defendants on March 6, 1997 and thereafter demanded the return of those shares which she had previously turned over. Defendants have refused to do so and in fact, filed a declaratory judgment action in the Northampton County Court of Common Pleas on September 12, 1997 asking that Court to declare the legal rights and obligations of the parties under the written fee agreement. (Complaint, ¶¶ 54, 58–61).

One month later, plaintiff filed this lawsuit alleging that defendants fraudulently misrepresented and inflated the value of the legal services they rendered and proposed to render to her in the divorce, custody and equitable distribution matter and with regard to enforcing an antenuptial agreement. In doing so, plaintiff contends, defendants violated Section 10(b) and Rule 10(b)–5 of the Securities Exchange Act, 15 U.S.C. § 78j(b), and should further be held liable to her under the common law theories of fraudulent misrepre-

---

the present time, however, the Court was notified that the plaintiff has settled her claims with defendants Norman Seidel, Esquire and the law firm of Laub, Seidel, Cohen & Hof. Accordingly, only Mr. Milides remains a defendant in this lawsuit and we address only plaintiff's allegations as to him.

**3.** Defendant Milides subsequently filed the complaint in the Northampton County Court on behalf of plaintiff on March 13, 1996 requesting a divorce, custody of the couple's three minor children, alimony pendente lite, counsel fees and costs, permanent alimony and equitable distribution of marital property. (Pl's Complaint, ¶ 23).

sentation, breach of fiduciary duty, civil conspiracy, unjust enrichment, violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201–9.2 and for an accounting. Defendants moved to dismiss this complaint on the grounds that plaintiff has failed to state a cause of action upon which relief may be granted under the federal securities laws and thus this Court should decline to exercise supplemental jurisdiction over the remaining state law claims. Defendants alternatively argue that since all of plaintiff's claims arise out of the attorney-client relationship in the state court divorce action and the Commonwealth of Pennsylvania and its courts have an overriding interest in and its laws will determine the outcome of that dispute, this Court should stay and abstain from hearing this action.

### Standards Governing Motions to Dismiss

■ Under Fed.R.Civ.P. 12(b), the defenses of lack of jurisdiction over the subject matter and the failure to state a claim upon which relief may be granted may be raised by motion. In resolving a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir.1990). In so doing, the court must accept as true the facts alleged in the complaint, together with all reasonable inferences that can be drawn therefrom and construe them in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3rd Cir.1990). The court's inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a) and whether the plaintiff has a right to any relief based upon the facts pled. Dismissal under Rule 12(b)(6) for failure to state a claim is therefore limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir.1988).

Similarly, a district court can grant a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on the legal insufficiency of the claim. However, dismissal is proper only when the claim "appears to be immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial or frivolous ... When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–09 (3rd Cir.1991). *See Also: Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 776, 39 L.Ed.2d 73 (1974).

■ Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), when a party attacks the factual allegations of jurisdiction, the courts are not limited in their review to the allegations of the complaint. Any evidence may be reviewed and any factual disputes resolved regarding the allegations giving rise to jurisdiction as it is for the Court to resolve all factual disputes involving the existence of jurisdiction. *Sitkoff v. BMW of North America, Inc.*, 846 F.Supp. 380, 383 (E.D.Pa.1994) citing *Moore's Federal Practice* (Second Ed.) at ¶ 12.07[2.–1]. In contrast, if the attack to jurisdiction is facial, that is, the allegations of jurisdiction stated in the complaint, the factual allegations of the complaint are presumed to be true and the complaint is reviewed to ensure that each element necessary for jurisdiction is present. *Id.* If jurisdiction is based on a federal question, the pleader claiming federal jurisdiction simply must show that the federal claim is not frivolous. *Radeschi v. Commonwealth of Pennsylvania*, 846 F.Supp. 416, 419 (W.D.Pa.1993), citing *Bartholomew v. Librandi*, 737 F.Supp. 22 (E.D.Pa.), *aff'd* 919 F.2d 133 (3rd Cir.1990). Only if it appears to a certainty that the pleader will not be able to assert a colorable claim of subject matter jurisdiction may the complaint be dismissed. *Kronmuller v. West End Fire Co. No.3*, 123 F.R.D. 170, 172 (E.D.Pa.1988). *See Also: Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3rd Cir.1977).

### Discussion

■ The courts have long recognized that the fundamental purpose of § 10b and Rule 10b–5 is to promote the full and fair disclo-

sure of material information in securities transactions and protect persons who are deceived in securities transactions, i.e., to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be. *Angelastro v. Prudential–Bache Securities, Inc.*, 764 F.2d 939, 949 (3rd Cir.1985), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985); *Pages, Inc. v. Gruner & Jahr Printing & Publishing Co.*, 1996 WL 48586 (S.D.N.Y.1996). This purpose is clear from a reading of Section 10–b and Rule 10b–5 themselves. Those sections state, in pertinent part:

### § 78j. Manipulative and deceptive devices

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or by the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

### § 240.10b–5 Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

To prevail on a claim under § 10b and Rule 10b–5, a plaintiff must plead and prove that the defendant: (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which the plaintiff relied; and (5) that plaintiff's reliance was the proximate cause of her injury. *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 269 (3rd Cir.1998); *Kline v. First Western Government Securities, Inc.*, 24 F.3d 480, 487 (3rd Cir.1994) citing *In re Phillips Petroleum Securities Litigation*, 881 F.2d 1236, 1244 (3rd Cir. 1989); *In re Chambers Development Securities Litigation*, 848 F.Supp. 602, 617 (W.D.Pa.1994); *Decker v. Landmark Savings Ass'n.*, 798 F.Supp. 1174, 1178 (W.D.Pa.1991). In this context, scienter means a deliberate or reckless misrepresentation intended to deceive, manipulate or defraud. *Newton v. Merrill Lynch*, 135 F.3d at 272–273; *McFeeley v. Florig*, 966 F.Supp. 378, 383 (E.D.Pa. 1997, citing, *inter alia, Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n. 12, 96 S.Ct. 1375, 1380–81, & n. 12, 47 L.Ed.2d 668 (1976)); *Eisenberg v. Gagnon*, 766 F.2d 770, 776 (3rd Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). However, neither allegations of negligent conduct, whether gross, grave or inexcusable, nor the mere allegation of mismanagement on the part of a defendant alone will suffice to support a claim under § 10b or Rule 10b–5. *Hayes v. Gross*, 982 F.2d 104, 106 (3rd Cir. 1992); *Rudinger v. Insurance Data Processing, Inc.*, 778 F.Supp. 1334, 1337 (E.D.Pa. 1991). *See Also: Shapiro v. UJB Financial Corp.*, 964 F.2d 272 (3rd Cir.), *cert. denied*, 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992).

Materiality, in turn, "depends on the significance the reasonable investor would place on the withheld or misrepresented information and requires a fact-specific inquiry ... Information is material if there is a

substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available . . ." *McFeeley,* 966 F.Supp. at 383 citing *Basic Inc. v. Levinson,* 485 U.S. 224, 240, 108 S.Ct. 978, 988, 99 L.Ed.2d 194 (1988) and *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

■ Finally, as noted above, a claim brought under § 10b or Rule 10b–5 requires that the misrepresentation be made "in connection with" the purchase or sale of a security. *In re Sunrise Securities Litigation,* 793 F.Supp. 1306, 1328 (E.D.Pa.1992), citing *Angelastro v. Prudential–Bache Securities, Inc., supra.* 764 F.2d at 942–943. While the "in connection with" language of § 10b must be read flexibly, it nevertheless requires that the plaintiff have suffered an injury as a result of deceptive practices touching the purchase or sale of securities, i.e., there must be some causal connection between the alleged fraud and the purchase or sale of a security. *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971); *In Re Sunrise, supra,* at 1328; *Seidman v. American Mobile Systems, Inc.,* 813 F.Supp. 323, 325 (E.D.Pa.1993). The requisite causal nexus exists when the alleged misrepresentation relates to the particular security's merits or value and a showing has been made that the plaintiff relied upon that misrepresentation in deciding whether to purchase or sell the security. *McFeeley v. Florig,* 966 F.Supp. 378, 383 (E.D.Pa. 1997). In this regard, several courts have held that an agreement exchanging services for stock constitutes a "sale" under the terms of the Securities Exchange Act and that fraud pertaining to the consideration for a securities transaction satisfies the connection requirement. *See: Nationwide Cellular Service, Inc. v. American Mobile Communications, Inc.,* 1991 WL 233284, at p. 4 (S.D.N.Y.1991); *Rudinger v. Insurance Data Processing, supra,* at 1338–1339, citing *Sanzone v. Phoenix Technologies, Inc.,* 1990 WL 50732, p. 14 (E.D.Pa.1990).

■ In applying the foregoing principles to this case and bearing in mind that the benefit of the doubt is to be given to the non-moving party in disposing of a motion to dismiss, we find that plaintiff has adequately pled a cause of action for securities fraud. Indeed, plaintiff alleges that in presenting her with the fee agreement, defendants represented to her that the value of the 35,553 shares of USA Waste stock which defendants sought to have transferred was equal to $1 million, the equivalent value of the legal services to be provided. (Complaint, ¶ s 44, 49, 53, 56, 63–66). Plaintiff further avers that defendants fraudulently inflated the value of the professional services to be provided and misrepresented that $1 million would be a reasonable and proper fee for those services, that these statements were made intentionally and for the purpose of defrauding her of her securities and that plaintiff reasonably relied upon the defendants' acts, practices and courses of conduct with the result that she suffered the loss of 17,777 shares. (Complaint, ¶ s 63, 65–70). We therefore conclude that while defendant is correct that plaintiff has alleged a breach of fiduciary duty in connection with the fee agreement, she has also sufficiently pled a cause of action for fraud under Section 10b and Rule 10b–5. Thus, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331.

■ Defendant alternatively urges this Court to exercise its discretion to stay these proceedings in deference to the state court declaratory judgment action and decline to exercise supplemental jurisdiction over plaintiff's state law claims for fraudulent misrepresentation, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, breach of fiduciary duty, conspiracy, unjust enrichment and for an accounting as these present novel issues of state law. While defendant is again correct that we have the discretion to decline to exercise jurisdiction where novel questions and issues of state law are raised, the common law claims which plaintiff raises here are neither novel, complex nor do they predominate over the federal question which plaintiff has raised in this case. Likewise, we can find no exceptional circumstances

which would dictate that this Court should decline to exercise supplemental jurisdiction. *See: PAS v. Travelers Insurance Co.*, 7 F.3d 349, 356 (3rd Cir.1993); *Ball v. District of Columbia*, 795 F.Supp. 461, 466–467 (D.D.C. 1992). To the contrary, the subject of the Northampton County declaratory judgment action is the reasonableness of the fees charged to plaintiff. There is no evidence that the Northampton County Court will be charged with determining the value of the USA Waste Stock which plaintiff turned over ostensibly in payment of those fees which, of course, is the issue here. For all of these reasons, defendant's motion to dismiss is denied.

An order follows.

### ORDER

AND NOW, this day of July, 1998, upon consideration of Defendants' Joint Motion to Dismiss Plaintiff's Complaint, it is hereby ORDERED that the Motion is DENIED for the reasons set forth in the preceding Memorandum Opinion.